NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

JAC 08-523

IN THE INTEREST OF C. S. J.

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 2007 TP 00011
HONORABLE PATRICIA EVANS KOCH, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

BILLY HOWARD EZELL
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Oswald A. Decuir, Michael G. Sullivan, and Billy Howard Ezell, Judges.

AFFIRMED.

Richard E. Lee
Attorney at Law
810 Main Street
Pineville, LA 71360
(318) 448-1391
Counsel for Appellants:
State of Louisiana
M. J.

**R. O'Neal Chadwick, Jr.**
**Attorney at Law**
**P. O. Box 12114**
**Alexandria, LA 71315**
**(318) 443-3793**
**Counsel for Appellee:**
**J. M.**

**Susan Ford Fiser**
**Attorney at Law**
**P.O. Box 12424**
**Alexandria, LA 71315-2424**
**(318) 442-8899**
**Counsel for Appellee:**
**C. S. J.**

**EZELL, JUDGE.**

A mother appeals a trial court's refusal to terminate the father's parental rights. She claims that the father failed to provide significant support and did not maintain significant contact with the child. The mother asserts that it is in the best interest of the child that the father's parental rights be terminated.

## FACTS

On May 10, 1999, the mother gave birth to a son. It was at that time that the father was first notified that the mother was pregnant. Although the father and mother never dated, the child was conceived during a brief encounter. Following the birth of the child, the father would visit with the child and on occasion bring him to his house or his parents' house. This lasted for a few months. It appears that the mother became upset that the father's girlfriend was around when he visited with the child, so visitation was not pursued. After that, the father did not see the child for approximately six years.

One day the mother told a mutual friend that her son would benefit from seeing his father. The father was receptive to the idea since he too had been thinking about the child. The two discussed the situation and agreed that there would be no formal arrangement. The father began visiting with the child again in the summer of 2005. Initially, the father would visit with the child at the mother's house. Eventually, the child would stay with him and his fiancée, who was the same woman the father was dating when the child was born. The father lived next door to his parents, so the child would also get to visit with his paternal grandparents.

This arrangement worked well for approximately two years until the summer of 2007. At that time, the child was playing on an All-Star baseball team. The mother became concerned by two separate events. The first occurred at the dugout

1

when the father told the child about the importance of practice after he missed a fly ball. This situation upset the child. The other incident occurred the next day. The parents got into a verbal altercation concerning the child going home with the father, which again upset the child. After these incidents, the mother would not let the father visit with the child.

On July 13, 2007, the State and the mother filed a petition for termination of parental rights of the father. It was alleged that the father failed to provide significant contributions to the child's care and support. During the trial of this matter, it was also alleged that the father failed to maintain significant contact with the child. The trial was held on November 15 and 26, 2007. The trial court refused to terminate the parental rights of the father. The trial court also ordered the father to pay child support in accordance with the child support guidelines and ordered the parents to seek counseling for the child and themselves to aid in establishing a healthy relationship. The State and mother appeal the judgment.

## DISCUSSION

The mother cites Louisiana Children's Code Article 1015(4)(b) and (c) arguing that the father failed to make any contributions to the child's care and support and failed to maintain contact by not visiting or communicating with him for a period of six years. She claims that the father failed to prove just cause for his actions and the trial court erred in finding that the father could reform by attending parenting classes. The mother argues that it is in the best interest of the child to terminate the father's parental rights.

Article 1015(4)(b) and (c) provide:

The grounds for termination of parental rights are:

. . . .

2

(4) Abandonment of the child by placing him in the physical custody of a nonparent, or the department, or by otherwise leaving him under circumstances demonstrating an intention to permanently avoid parental responsibility by any of the following:

. . . .

(b) As of the time the petition is filed, the parent has failed to provide significant contributions to the child's care and support for any period of six consecutive months.

(c) As of the time the petition is filed, the parent has failed to maintain significant contact with the child by visiting him or communicating with him for any period of six consecutive months.

In well-written reasons for ruling, the trial court made the following observations and conclusions:

Clear to this court is that [the father] has not been a model parent. He did not continue to pursue his parental rights as a father when [C. S.] was a baby, but rather simply chose to ignore the issue entirely. He allowed time to pass and only got into the child's life when the child was five years of age, a time when others had already shaped the child's understanding of the world around him. [The father], again not a model parent, began to try to force his thoughts, actions, and behaviors on a child that is perhaps more sensitive than other children with whom [the father] may have been familiar. [The father] readily admits that he was too aggressive and felt frustration towards an inadequacy he felt in dealing with situations.

[The father's] level of immaturity is also clear to the court. [The father] was nineteen years of age when this child was born to a girl he only briefly dated and was not with throughout the pregnancy. He did not handle that situation well and has continued to be immature about the needs of a child, especially when it comes to the financial and emotional needs of a child.

There is no doubt that no official child support was paid. Both parties simply failed to secure their agreements in writing hoping that all would work out in the end. What has happened instead is the pursuit of a termination, when the answer to their situation would have been a suit for child support and custody in which the parents would begin to make decisions thoughtfully and with the best interest of the child in mind.

The child was provided an opportunity to know his biological father and from what the testimony indicated, those affections were for the most part fun and memorable. The father and his fiancé [sic] were welcomed at events involving the child, and the makings are there for this child to have a relationship not only [with] his biological father but

3

with the father's family. To suddenly pull a child through termination of parental rights from a course that was developing is not in the child's best interest.

The court recognizes that [the father] is not a model parent; however, parenting is a skill that can be learned. [The father] has not been there for the day-to-day lessons of raising and of learning about the particulars of a child, like the mother has. His experience has been one of a father who was available for fun, buying of toys (4-wheeler, video game equipment), or playing video games. While those can be wonderful attributes of a father, learning effective discipline and parenting skills is the lifelong goal of a parent.

As discussed previously, the fundamental purpose of involuntary termination proceedings is to provide the greatest possible protection to a child whose parents are unwilling or unable to provide adequate care for his physical, emotional, and mental health needs and adequate rearing. Clearly, that is not the case with [the father]. When invited back into the child's life he immediately began making contact with the child and even had extended overnight visits with the child. His involvement was continuous for a period of two years and ended only because of an unfortunate incident at the ballpark.

. . . .

The actions of [the father] cannot and are not condoned by this court; however, termination is premature because [the father] has not been provided nor instructed as to appropriate skills needed to be a parent. State in the Interest of C.D. and J.C., 01-0663 (La.App. 10/3/01) 796 So.2d 844, writ denied, 01-2986 (La.11/20/01), 801 So.2d 1079. It is in the best interest of [the child] that his father is allowed the opportunity to provide for his son the love, care, and support that [the child] requires from his natural father.

In Santosky v. Kramer, 455 U.S. 745, 753, 102 S.Ct. 1388, 1395 (1982), the Supreme Court recognized that natural parents have a fundamental liberty interest in the care, custody, and management of their child and that the natural parents' interest "does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State." The Court went on to acknowledge that, while the State has an "urgent interest" in a child's welfare and in providing the child with a permanent home, as long as there is reason to believe that a positive nurturing parent-child relationship exists, the State's interest should favor

4

preservation over severance of natural family bonds. *Id*. at 766, 102 S.Ct. at 1401.

The findings of fact by a trial court in a parental rights termination case will not be set aside absent manifest error. *State in Interest of K.N.F.*, 96-390 (La.App. 3 Cir. 7/17/96), 677 So.2d 166. The termination of parental rights is a severe and final action, and all reasonable doubts should be resolved against terminating parental rights. *Id*.; *State ex rel K.R. v. G.M.*, 98-1943 (La.App. 3 Cir. 3/31/99), 732 So.2d 712.

While it is true that the father did not see the child for a period of about six years after his birth, the father visited often with the child the two years prior to the filing of the petition for termination of parental rights. There is also no doubt that the father has not paid child support. However, he has never been asked to pay child support and testified that he bought the child clothes, games, etc., for the times the child stayed with him. He gave no indication that he was not willing to support the child as needed.

Even if a ground for termination exists under Article 1015, the trial court must still find that termination is in the child's best interest. *In re D.M.*, 05-2046 (La.App. 1 Cir. 2/10/06), 928 So.2d 624.

While the father needs to work on his parenting skills, there is no indication that it is in the best interest of this child that his relationship with his father be terminated. We find no manifest error in the trial court's decision.

The decision of the trial court is affirmed. All costs of these proceedings are assessed to the mother.

**AFFIRMED.**

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION. Rule 2-16.3 Uniform Rules, Court of Appeals.

5