944 So.2d 1262 (2006)
STATE of Louisiana in the Interest of R.A.
No. 2006-CJ-2380.
Supreme Court of Louisiana.
December 15, 2006.
PER CURIAM.
Writ granted in 06-CJ-2380. We granted certiorari to consider the legal *1263 issue of whether the juvenile court exceeded its statutory authority when it ordered a child adjudicated in need of care in the custody of the Department of Social Services ("The Department"), Office of Community Services("OCS"), be placed in a family setting and prohibited placement of the child in a group home setting.
On August 24, 2006, the juvenile court held a review hearing pursuant to La. Ch. C. art. 692 to review the case plan prepared by OCS for the child in need of care, R.A., who was living in a foster home, an emergency placement. OCS asserted R.A. needed to be placed in a group home because of his behavioral problems and presented to the court the only home that would accept R.A. at the time was Hope Haven. Based on the evidence presented that R.A. was improving significantly with his placement in the foster home, the juvenile court judge rejected the plan to place R.A. in Hope Haven and specifically ordered R.A. be placed in a family setting if his current foster home placement could not be made a permanent one. The judgment at issue stated, "The court ordered the Office of Community Services to place [R.A.] in a family setting if his current placement changes. Further, the court disapproves any group home placement, specifically: Hope Haven."
In application to this court, OCS asserts the juvenile court exceeded its statutory authority in ordering R.A. be placed in a family setting and prohibiting placement in a group home. We agree.
Article 672(A) of the Louisiana Children's Code provides the Department with sole authority over the specific placements of children assigned to its custody. Once a child enters the Department's custody, the Department must develop a case plan detailing its efforts toward achieving a permanent placement for the child. La. Ch.C. art. 673. The case plan "shall be designed to achieve placement in the least restrictive, most family-like, and most appropriate setting available, and in close proximity to the parents' homes, consistent with the best interest and special needs of the child. The health and safety of the child shall be the paramount concern in the development of the case plan." La. Ch.C. art. 675(A). These statutes, however, must be read in conjunction with the other statutes that govern child in need of care proceedings. Article 692 provides for periodic review hearings by the court. At the conclusion of the case review hearing, the court may "[a]pprove the plan as consistent with the health and safety of the child and order compliance by all parties," La. Ch.C. art. 700(A)(1), or "[f]ind that the case plan is not appropriate, in whole or in part, based on the evidence presented at the contradictory hearing and order the department to revise the case plan accordingly." La. Ch.C. art. 700(B). In approving or rejecting the case plan, the court cannot revise the plan itself or order specific placements of children placed in the Department's custody. State ex rel. L.C.B., 01-2441, p. 10 (La.1/15/02), 805 So.2d 159, 164-65. Thus, while the juvenile court retains the ultimate authority over a child's placement, the Department has the sole authority to determine the specific placements of children in its custody. Id. at pp. 9-10, 805 So.2d at 164.
In the instant case, the juvenile court did more than merely reject and order revision of the Department's plan. The court therefore exceeded its statutory authority when it prohibited placement in a group home and ordered placement specifically in a family setting. The Department has the sole authority to determine the particular placement setting for the child. The court may only accept or reject and order revision of the case plan; it may not order specific placements. Accordingly, *1264 to the extent the judgment impinges on the authority given OCS to select a specific placement for R.A., the judgment is vacated. The writ is otherwise denied.
JUDGMENT VACATED IN PART.
JOHNSON, J., would deny with reasons.
VICTORY, J., would deny.
KNOLL, J., dissents with reasons.
JOHNSON, J. would deny the writ application for the following reasons:
The Department of Social Services' ("the Department") position is that pursuant to LSA-Ch.C. art. 672(A) it has sole authority over children committed to its custody. The Department has asked this Court to reaffirm the limits on the court's authority to determine placement of a juvenile. I agree with the Juvenile Court that the Department has violated federal and state statutory mandates to achieve placement of juveniles in the least restrictive, most family-like, and most appropriate setting. The court was not satisfied that the Department had made any reasonable effort to comply with the court's order. The Department's search for a foster family was limited to East Baton Rouge Parish. The search for a grouphome placement was statewide. (Hope Haven is in Jefferson Parish).
LSA-Ch. C. art. 675 provides, in pertinent part:
A. The case plan shall be designed to achieve placement in the least restrictive, most family-like, and most appropriate setting available, and in close proximity to the parents' homes, consistent with the best interest and special needs of the child. The health and safety of the child shall be the paramount concern in the development of the case plan.
It is uncontroverted that at the August 24, 2006 case review hearing, R.A. was living in the Costello foster home and was adjusting well to this temporary placement. He was enrolled in high school and following the house rules. Despite a history of difficult placements in various group home settings, this evidence shows that R.A. was able to make a successful adjustment to a foster home. His behavior had improved dramatically. Counsel for R.A.'s biological mother suggests: "At the August 24, 2006 court hearing, while R.A. was waiting in the hallway for his case to be heard, he was informed that he was being moved to Hope Haven Center in Marrero, Louisiana." He was in fact moved on August 31, 2006, despite the court's ruling.
Every child deserves a home. Louisiana seems to be one of the few places where case workers are still determined to institutionalize them. The Department has concluded that R.A. needs constant supervision and will only consider group placement for him. The Department has challenged the Juvenile Court's authority to determine the most appropriate placement, and which setting is in the best interest of the child. The Office of Community Services ("OCS") made no attempts to place R.A. in a "family setting." The Court specifically disapproved any group home placement, "specifically, Hope Haven." Hope Haven is a secure locked, therapeutic facility, the most restrictive placement available through the Department.
I fail to see the need for this supervisory writ, which was filed by the Department on September 29, 2006. The Department had defied the court's order on placement and was only concerned at that point, I suppose, with being found in contempt of court.
Do we still need Juvenile Judges to determine the best placement for children in *1265 need of care? In my opinion, the Department has usurped the court's role which is to determine what is in the best interest of the child.
The good news is that R.A., at age 16, will soon leave state supervision. The tragedy is that the state has failed to provide him with a foster home, when we could have done so. I agree with R.A.'s CASA volunteer "the system has failed him as he has been labeled 'group home material'."
KNOLL, J., dissenting.
With all due respect, in my view the majority errs in finding the juvenile court's ruling "that the least restrictive placement for R.A. is a family setting" and specifically disapproving the plan to facilitate a group home placement, revised the Department's case plan in violation of La. Ch.Code art. 672A. I further find that granting this writ with a per curiam without a full record before us impedes our ability to thoroughly explore the "case plan" of the child. In my view, there is a distinction between what constitutes a case plan and balancing the statutory requirement of placement of the child in the "least restrictive, most family-like, and most appropriate setting", in the best interest of the child, coupled with the juvenile court's role to protect the child's right to thrive and survive.
At any point in a child in need of care proceeding that a child enters the custody of a child care agency, such as the Department, the custodian shall develop a case plan detailing the custodian's efforts toward achieving a permanent placement for the child. See La. Ch.Code arts. 671, 673. The Children's Code further provides, in pertinent part:
A. The case plan shall be designed to achieve placement in the least restrictive, most family-like, and most appropriate setting available, and in close proximity to the parents' homes, consistent with the best interest and special needs of the child. The health and safety of the child shall be the paramount concern in the development of the case plan.
B. The case plan shall include at least the following:
(1) A description of the type of home or institution in which the child is placed, including a discussion of the child's health and safety, the appropriateness of the placement, and the reasons why the placement, if a substantial distance from the home of the parents or in a different state, is in the best interest of the child.
(2) A plan for assuring that the child receives safe and proper care, and that services are provided to the . . . child, . . . in order to . . . facilitate the safe return of the child to his own home or other permanent placement of the child, or both, and address the needs of the child while in foster care, including . . . a discussion of the appropriateness of the services that have been provided to the child under the plan. When appropriate for a child sixteen or older, the plan shall include a written description of the programs and services which will help the child prepare for the transition from foster care to independent living.

* * *
La. Ch.Code art. 675 (emphasis added).
In developing a case plan, the health and safety of the child shall be the paramount concern. See La. Ch.Code arts. 673 and 675A. The Code further provides that the case plan shall be designed to achieve placement in the least restrictive, most family-like and most appropriate setting available consistent with the best interest and special needs of the child. See La. *1266 Ch.Code art. 675A. Case review hearings are required to be held at least once every six months until the child is permanently placed. See La. Ch.Code art. 692B. At the conclusion of the case review hearing the court may either approve the plan as consistent with the health and safety of the child or find that the case plan is not appropriate and order the Department to revise the case plan accordingly. See La. Ch.Code art. 700A(2).
The health, safety and best interest of the child shall be the paramount concern in all child in need of care proceedings. See La. Ch.Code art. 601. This lodestone of the juvenile justice system is meaningless without an opportunity for judicial review. State ex rel. L.S., 01-2215, p. 13 (La. App 4 Cir. 3/20/02), 814 So.2d 601, 608, writ denied, 02-0957 (La.4/17/02), 813 So.2d 414. The juvenile court, in its case review hearing, found the Department's case plan for R.A. was not appropriate and ordered the Department to effectuate the least restrictive and most family-like setting for R.A.
In its written reasons for judgment, the juvenile court observed that the evidence presented demonstrated that the least restrictive setting for R.A. is a foster family. The Department, without any supporting facts, concluded that R.A. is in need of constant supervision and indicated its intent to place R.A. in a staff-secure, locked therapeutic residential facility  the most restrictive placement available. The Department's case plan to place R.A. in a restrictive facility was made despite the evidence in the case review report that R.A.'s "emergency" foster family placement has been positive. The Department reported R.A. "is following house rules and is enrolled in High School. He expresses interest in playing football and has gone to football practice." This same report outlines a history of difficulties R.A. experienced in various group home settings, each lasting approximately one month. The CASA report detailed R.A.'s successful acclimation in the foster home and concluded it is an extremely different environment from the group home setting he is used to and his behavior has improved dramatically. I find it significant the Department's explanation for its limited efforts in searching for a foster family was that a case manager in another region might be upset if a youth from the Baton Rouge region was using a foster home placement in another region. This explanation does not appear to support a decision made for the best interest of the child, but rather for administrative reasons of the Department. This gives me pause. The Department policy manual itself declares placement of a child in a facility shall only be made when no available relative or foster placements can meet the child's needs. Thus, the juvenile court did not approve the case plan because the Department did not make reasonable efforts to achieve the least restrictive, most family-like and most appropriate setting as legislatively mandated. An appellate court cannot set aside a juvenile court's findings of fact in the absence of manifest error or unless those findings are clearly wrong. State in the Interest of S.M.W., 00-3277, p. 14 (La.2/21/01), 781 So.2d 1223, 1233.
I do not find the juvenile court's order disapproving of the Department's case plan and holding the matter open determined a particular placement for R.A., thereby revising the case plan in violation of La. Ch.Code articles 672A and 700. See State ex rel. L.C.B., 01-2441, p. 10 (La.1/15/02), 805 So.2d 159, 165. In that matter, the juvenile court made a particular placement choice by ordering the child be moved to a certified foster home within five days. Rather, in the matter sub judice, the juvenile court disapproved of the case plan; critical to review of the plan is a *1267 determination of the appropriateness of the child's placement. Although the minutes reflect the juvenile court judge mentioned Hope Haven specifically in her order disapproving the Department' s plan, her written reasons, read overall, demonstrate her ruling only disapproved the case plan, not a specific placement for R.A. The juvenile court amply supported its determination that the Department violated statutory mandate to achieve placement in the most appropriate and family-like setting in the best interest of the child. To reverse the juvenile court's decision would allow untrammeled discretion to the state agency where there is a showing of impairment of the child's best interest. The judicial system is required to protect children's rights to thrive and survive. State in the Interest of S.M., 98-0922, p. 14 (La.10/20/98), 719 So.2d 445, 452. Although the court may not revise the plan or make particular placements, the court remains the ultimate authority over a child's placement. L.C.B., 01-2441 at p. 11, 805 So.2d at 165. It is critical that the State meet the best interest of this child, as statutorily mandated. R.A., who has been in custody since February 2003, will turn 17 in January, 2007. For these reasons, I would deny the writ.