GULOTTA, Judge.
In this action under LSA-R.S. 13:1601(E)[1] to terminate an incarcerated *1337 natural father’s parental rights, the State, through the Louisiana Department of Health and Human Resources (DHHR), appeals from a directed verdict in favor of the father.[2] We affirm.
The father was convicted of murder in 1976, and sentenced to life imprisonment without eligibility of parole for 20 years. The child, born in 1973, has been in the custody of DHHR since the father’s incarceration in 1975, and in foster care since 1978. The State brought this action for termination of the father’s parental rights in order to free the child for adoption by the foster parents.
In reasons for judgment granting the directed verdict, the trial judge stated that DHHR had failed: 1) to give proper notice to the father that he could suffer termination of his parental rights unless he provided an appropriate plan for the child’s care; 2) to show that the father had refused or failed to provide such a plan after notice; and 3) to prove by expert testimony that the termination of the father’s rights was in the child’s best interest.
Appealing, the State claims the trial judge erred by strictly construing the provisions of LSA-R.S. 13:1601(E) and (G) to require that, within 48 hours of the parent’s incarceration, DHHR must send a notice containing specified language.[3] According to the State, strict compliance in this case compels an untenable result of forcing the child “to the limbo of foster care for the rest of her minority”, and defeats the intent of the legislation concerned, first and foremost, with the child’s best interest.
The State further points out that LSA-R.S. 1601(G)’s 48 hour notice requirement does not apply in this case since the statute became effective on September 11, 1981, long after the father’s imprisonment in 1976. According to the State, sufficient notice was sent to the father within a reasonable time through a November 10, 1981 letter from a DHHR worker two months after the effective date of the statute. [A copy of the letter, with appropriate name deletions, is attached as an appendix to this opinion].
At the outset, we reject the State’s contention that LSA-R.S. 13:1601(G) is not to be read in conjunction with LSA-R.S. 13:1601(E).
LSA-R.S. 13:1601(E), relied on by DHHR in seeking termination, specifically applies to a parent incarcerated in a state or federal penal institution. Unlike the other sections of LSA-R.S. 13:1601, which pertain to termination based upon abuse or neglect of the child or upon unfitness of the parent, Section (G)(1) also specifically relates to a parent incarcerated in a state penal institution and must be read in pari materia with Section (E). Such a reading compels a conclusion that the notice requirement of LSA-R.S. 13:1601(G) is essen *1338 tial to termination of parental rights under LSA-R.S. 13:1601(E).
The State’s reliance on In the Interest of Keith O’Neal Miles, 441 So.2d 61 (La.App. 3rd Cir.1983) is misdirected. The Miles opinion properly held that LSA-R.S. 13:1601(G)(1) was not an essential prerequisite for the termination of parental rights on grounds other than incarceration of a parent. Unlike Miles, our case seeks termination based upon the placement of a child in foster care for a period in excess of two years where the parent has been incarcerated in a State penal institution and has no reasonable expectation of release for an additional 5 year period. Clearly LSA-R.S. 13:1601(G)(1) applies in our case.
In termination cases brought under this statute, proof is required by “clear and convincing evidence”. See LSA-R.S. 13:1603(A). See also Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), where the United States Supreme Court held that, before a State may terminate the rights of a natural parent, due process requires that the State support its allegations by clear and convincing evidence.
Also well settled is the rule that adoption statutes, being in derogation of a parent’s natural right, are to be strictly construed. See Roy v. Speer, 249 La. 1034, 192 So.2d 554 (1966), In Re Plaisance, 394 So.2d 776 (La.App. 4th Cir.1981); and Adoption of Rapp, 348 So.2d 107 (La.App. 4th Cir.1977). Although the above-cited cases involve step-parent and grandparent adoptions and the termination of parental rights pursuant to LSA-R.S. 9:422.1, the same natural parental rights are involved in this case under LSA-R.S. 13:1601 et seq., and the rule of strict statutory construction likewise applies.
Construing LSA-R.S. 13:1601(0(1) together with LSA-R.S. 13:1601(E), we are led to conclude that DHHR failed to satisfy the statutory notice requirements in this case.
LSA-R.S. 13:1601(G) provides that within 48 hours after incarceration each person “incarcerated in a State penal institution shall (emphasis ours) be given and allowed to keep the following notice ...”:
“Louisiana law provides that your rights as a parent can be permanently terminated under certain circumstances. When parental rights are terminated, a parent loses all rights to visit, have custody of, or make any decisions or exercise any control over his or her minor child, or children.
Your parental rights may be permanently terminated if, after notice by the Department of Health and Human Resources, you fail to provide a plan for appropriate care for your minor child or children during the period of your incarceration.
Please refer to Louisiana Revised Statutes 13:1600 to 1605, especially 1601(E), for the details of Louisiana law on termination of parental rights.”
The act then prescribes that a copy of the termination statute be attached to the above notice.
Although we find merit to the State’s argument that the 48 hour requirement of the statute does not apply to a father who was incarcerated prior to the effective date of LSA-R.S. 13:1601(G), the inapplicability of this time constraint does not excuse the State from following the statutory mandates for the form of the notice.[4]
LSA-R.S. 13:1601(G) sets forth the exact wording of the notice to be furnished the incarcerated parent. The November 10, 1981 letter sent to the father by a DHHR worker in our case (see Appendix), however, only implored the father to think about the best interest of the child, and enclosed a copy of the termination of parental rights statute. No separate notice worded exactly as required in the statute was attached. Although DHHR’s letter *1339 and the copy of the statute afforded some measure of alerting the father to the possibilities of losing his parental rights, due process requires that there be strict compliance with the statutory notice requirements where the fundamental right of parenthood is at stake. DHHR’s letter fails to meet due process requirements.
We would have little difficulty in reversing the judgment and remanding the matter to the trial court, but for DHHR’s failure to send the proper statutory notice. Like the trial judge, who reluctantly granted the motion for a directed verdict, we too are concerned with the best interest of the child and sensitive to the emotions involved. As pointed out by the trial judge, it is probably in the child’s best interest that termination be granted. Moreover, we could conclude from the evidence that the father has failed to provide a plan for appropriate care of the child.[5]
Nonetheless, because of the State’s failure to comply with the mandatory notice requirements, there is no legal basis for terminating the father’s parental rights at this time.
We hasten to point out, however, that our holding here will not prejudice the State (through DHHR or any other appropriate State agency) to reinstitute termination proceeding in compliance with the statutory requirements.
Having so concluded, we affirm the judgment of the trial court.[6]
AFFIRMED.

*1340

. LSA-R.S. 13:1601. Petitioning for the termination of parental rights:
The court on its own motion may order that the district attorney petition, or the district attorney in his discretion may petition, for the termination of parental rights of the parent or parents of an abused, neglected, or other child within a juvenile court's jurisdiction, when the grounds set forth in the petition meet all the conditions of Subsection A, B, C, D, E, or F of this Section....
E. (1) The child has been in the custody of the Department of Health and Human Resources for a period of at least two years.
*1337 (2) The department was granted custody of the child and continued holding custody of the child due to the incarceration of the parent in a state or federal penal institution and the parent’s refusal or failure to provide a plan for appropriate care for the child, other than foster care, after notice by the Department of Health and Human Resources.
(3) There is no reasonable expectation of the parent’s release for at least five additional years....

. To preserve the privacy of the persons involved, we have deleted all names and personal references in our opinion and its appendix.

. LSA-R.S. 13:1601(G) provides in pertinent part:
(G). (1) Each person who is incarcerated in a state penal institution in this state shall be given and allowed to keep the following notice within forty-eight hours after incarceration:
"Louisiana law provides that your rights as a parent can be permanently terminated under certain circumstances. When parental rights are terminated, a parent loses all rights to visit, have custody of, or make any decisions or exercise any control over his or her minor child, or children.
Your parental rights may be permanently terminated if, after notice by the Department of Health and Human Resources, you fail to provide a plan for appropriate care for your minor child or children during the period of your incarceration. Please refer to Louisiana Revised Statutes 13:1600 to 1605, especially 1601(E), for the details of Louisiana law on termination of parental rights.”

. Although we conclude the 48 hour notice requirement does not apply in the instant case, we fail to see any reasonable basis for the inclusion in the statute of such a limited period of time. The 48 hour period simply cannot withstand the rule of reason.

. After receiving the November 10, 1981 letter from DHHR, the father submitted an unsatisfactory plan for the care of the child with a person unknown and unrelated to the child.
Prior to receipt of the November letter, the father had submitted a plan for placement of the child in a home, approved by the department after investigation, but this party declined to accept custody of the child.
The father's alternate recommendation for placement of the child with the paternal grandmother did not come into existence because of the grandmother’s death.

. We further note that the father has filed a motion to impose sanctions against the State for attaching to its brief a copy of a newspaper article concerning the facts of this case. The article, which was not in evidence at trial, is not properly before us. See Owens v. New Orleans Bldg. Maintenance, Inc., 349 So.2d 494 (La.App. 4th Cir. 1977). Accordingly, we have not considered it in reaching our decision.
The father’s attorney has also filed a "Motion for Supplemental Attorneys Fees for Post Judgment and Appellate Work”. In support of his claim, the attorney has attached an affidavit itemizing the time expended. We refer the motion to the trial court for the purpose of hearing evidence and making a disposition.