# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 10-571

## STATE OF LOUISIANA IN THE INTEREST OF G. O.

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF VERMILION, NO. 2007 JU 234
HONORABLE DURWOOD W. CONQUE, DISTRICT JUDGE

**********

## ELIZABETH A. PICKETT
## JUDGE

**********

Court composed of Elizabeth A. Pickett, Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, John D. Saunders, and Marc T. Amy, Judges.

Amy, J., dissents and assigns reasons.

### JUDGMENT VACATED; REMANDED WITH INSTRUCTIONS.

Jo Ann Nixon
129 W. Pershing Street
New Iberia, La   70560
(337) 369-7437
COUNSEL FOR APPELLANT:
      M.L.  (Mother)

Reule P. Bourque
Post Office Box 127
Kaplan, LA   70548
(337) 643-8686
COUNSEL FOR APPELLEES:
      G.R. and N. R.  (Maternal grandmother and step-grandfather)

**Gregory B. Dean**
**Dean Law Offices**
**Post Office Drawer 280**
**Opelousas, LA   70571-0280**
**(337) 942-5111**
**COUNSEL FOR APPELLEES:**
    **S. B. and K.B.   (Paternal stepfather and grandmother)**

**Diane E. Cote**
**825 Kaliste Saloom Road**
**Brandywine I, Room 218**
**Lafayette, LA   70508**
**(337) 262-1555**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana, Department of Social Services**

**Nicole M. Guidry**
**Two South Magdalen Square**
**Abbeville, LA   70510**
**(337) 740-8885**
**COUNSEL FOR APPELLEE:**
    **R. O.  (Father)**

**Bart A. Broussard**
**209 E. St. Victor**
**Abbeville, LA   70510**
**(337) 893-1705**
**COUNSEL FOR APPELLEE:**
    **G. O.**

**PICKETT, Judge.**

The appellant seeks review of a judgment terminating her parental rights to her minor son and certifying that he is eligible for adoption. She asserts the following assignments of error:

> 1. The [a]ppellant assigns error to the actions of the trial court in terminating the parental rights of a non-offending parent for substantial non-compliance when she had completed several components of the case plan and was actively involved in mental health treatment.
>
> 2. The [a]ppellant assigns error to the actions of the trial court in terminating her parental rights where there had been improvement and expectation for further improvement with appropriate and adequate treatment.
>
> 3. The [a]ppellant assigns error to the actions of the trial court in finding that termination was in the best interest of the child considering the relation of the child to his mother.
>
> 4. The [a]ppellant assigns error to the actions of the trial court in failing to monitor the actions of the state to assure that the order of the court directed toward reunification of the child with his mother was followed.
>
> 5. The [a]ppellant assigns error to the placement of the child during the term that the child was in the care of the state with the reporting party.

The State of Louisiana, through the Department of Social Services (DSS), filed a Petition for Termination of Parental Rights and Certification for Adoption (Petition) on April 22, 2009. The Petition alleges, among other things, that G.O. is a minor child:

> [C]urrently in the custody of [DSS] on July 27, 2007, on the grounds of neglect and sexual abuse and was adjudicated a "Child in Need of Care" by judgment rendered on November 07, 2007. The minor child has remained in the custody of [DSS] since entering care and is currently residing in St. Landry Parish, Louisiana with relative foster parents.

The Petition also sets forth numerous deficiencies as to parental fitness and/or compliance with case plans formulated by DSS and prays for termination of the parental rights of both the mother and father. Judgment was, after a trial on the

1

merits, granted in favor of DSS, and the parental rights of M.L. and R.O. were terminated by the trial court. Only M.L. has appealed that judgment.

The facts of this case are somewhat unusual, and it is necessary to review those facts to reach a resolution. G.O. was born July 12, 2003, of a union between M.L. and R.O. R. O. acknowledged the child, but there is no evidence in the record that M.L. and R.O. ever maintained a common household. The evidence is clear that both M.L. and R.O. experienced difficulties in successfully parenting G.O.

On March 03, 2004, a consent judgment was signed by the Honorable Judge Blanchet in the matter of [R.O. v. M.L.], 81154, Fifteenth Judicial District Court, Vermilion Parish. This judgment granted joint custody of G.O. to R.O., M.L., the maternal grandmother (G.R.), and the paternal step-grandfather (S.B.). All parties to the litigation agreed to this custody arrangement as is reflected by the terms of the consent judgment.

Subsequent to the entry of this judgment, G.O. lived primarily with S.B during the week while attending school and at the home of G.R. on the weekends. There is no evidence that either M.L. or R.O. had substantial involvement in the day to day care of G.O.

On July 13, 2007, DSS received a report that G.R.'s husband had sexually abused G.O. At the time DSS received and investigated the complaint, G.O. was actually physically in the custody of and staying with S.B. and his wife, K.B.. He was not in the home of the alleged perpetrator. No allegations of abuse or neglect were made against K.B. or S.B. who, under the March 3, 2004 judgment, was a legal guardian of G.O. Although it is clear that M.L. and R.O. have ongoing issues that impede their parenting ability, no allegations of abuse or neglect were made against

2

either parent. G.O. was not in the physical custody of G.R., where the alleged act occurred, at the time of the investigation.

DSS sought an Instanter Order from the Fifteenth Judicial District Court which stated, among other things, that it was necessary to place G.O. in the temporary custody of DSS for his protection and that continuation in his *present* home was contrary to his health, safety, and welfare. He was placed in the *legal* custody of DSS.

On July 31, 2007, a seventy-two-hour hearing was held to determine whether G.O. should remain in the custody of DSS and that request was granted. It was noted that DSS was placing G.O. in the home of S.B. pending further proceedings. G.O. was never physically removed from S.B.'s home.

DSS subsequently filed a Petition, alleging G.O. was a Child in Need of Care because of the alleged abuse set forth in the affidavit in support of the Instanter Order. On August 13, 2007, an Order of Continued Custody was signed which specified that G.O. was a Child in Need of Care, that DSS had made reasonable efforts to prevent his removal from the home, that a substantial and immediate danger existed at the time the oral Instanter Order was issued which precluded preventive services as an alternative to removal, and that it was necessary to take G.O. into custody for his protection.

The record reflects no evidence that G.O. was in anything but a safe and secure environment in S.B.'s home. He was not at risk of harm or further abuse in S.B.'s home. No allegations of abuse or neglect were ever made against S.B. or K.B. In a report filed with the trial court in anticipation of a January 8, 2008 review hearing, DSS noted that G.O. was living in S.B.'s home where he was doing well. Legal

3

custody only of G.O. was transferred to DSS while physical custody remained with S.B. who, as previously noted, was his legal guardian pursuant to the March 3, 2004 judgment. G.O. was ultimately adjudicated a Child in Need of Care. Thereafter, a case plan was filed which reflected an ultimate goal of reunification with M.L. and R.O. When M.L. and R.O. did not, in DSS's opinion, make appropriate strides toward completing the requirements of the case plan, the case plan's goal was ultimately changed to adoption. In the meantime, S.B. and K.B. became certified foster parents, and DSS thereafter noted that G.O. was in the certified foster home of a relative.

On April 22, 2009, a Petition for Termination of Parental Rights was filed, seeking the termination of the parental rights of both parents. A two-day trial was held on January 25 and January 29, 2010. The trial court subsequently entered judgment in favor of DSS and terminated the parental rights of both M.L. and R.O.

Parents have a fundamental liberty interest in the companionship, care, custody, and management of their children which warrants great deference and vigilant protection under the law. *State in the Interest of T.S.B.*, 532 So.2d 866 (App. 4 Cir. 1988), *writ denied*, 536 So.2d 1239 (La.1989). Therefore, a proceeding to irrevocably terminate a parent's rights must satisfy the highest standards of due process. *Id.* Laws pertaining to termination of parental rights and adoption are in derogation of a parent's natural rights and must be strictly construed. *State in the Interest of M.*, 448 So. 2d 1335 (App 4 Cir. 1984). Consequently, strict adherence to the statutory law from the time a minor child is removed from his home until the finalization of the adoption proceeding is required.

4

Louisiana Children's Code Article 606 (emphasis added) sets forth the grounds for determination that a child is in need of care and specifies in part:

> A. Allegations that a child is in need of care must assert one or more of the following grounds:
>
> (1) The child is the victim of abuse perpetrated, aided, or tolerated by the parent or caretaker, by a person who maintains an interpersonal dating or engagement relationship with the parent or caretaker, or by a person living in the same residence with the parent or caretaker as a spouse whether married or not, *and his welfare is seriously endangered if he is left within the custody or control of that parent or caretaker.*

In the matter before us, although the allegation of abuse was against the spouse of a joint legal custodian with whom G.O. spent his weekends, G. O. *was not* in the physical custody or household of the alleged perpetrator when this report was made. He was in the physical and legal custody of S.B. with whom he primarily resided and against whom no allegation had been made and who, in fact, reported the abuse. G.O.'s health, safety, and welfare in S.B.'s home was never endangered, as was obviously noted by DSS which saw no need to physically remove him from the home and which certified S.B. and K.B. as foster parents. Clearly, G.O. did not, therefore, "fit" within the definition of a Child in Need of Care under Article 606.

In spite of this glaring fact, DSS sought and obtained an Instanter Order ostensibly "removing" G.O. from S.B.'s home and placing him in state custody, and a Continued Custody Hearing was held. At the Continued Custody Hearing, DSS recommended G.O. be "placed" in S.B.'s care, when S.B. was already a joint legal custodian of G.O. and the individual with whom he was primarily residing. In other words, G.O. was never actually "removed" from S.B.'s physical custody. Because G.O. was in the legal and physical custody of a responsible adult, against whom no allegations had been made at the time of DSS's report and investigation, and not in

5

the home of the alleged perpetrator, DSS's involvement should have ended there, but it did not.

A seventy-two-hour hearing, or Continued Custody Hearing, was held on July 31, 2007. M.L., G.R., S.B., and K.B. were all present with legal counsel. DSS's Petition recited the pertinent facts and noted that the alleged perpetrator was the maternal step-grandfather. The minutes of that hearing reflect that it was stipulated that G.O. should be continued in the custody of DSS with physical custody of him being granted to S.B. and K.B. The trial court entered an order to that effect.

Louisiana Children's Code Article 627 (emphasis added) provides in pertinent part:

> A. Following a hearing, the court may return the child to the parents or, in accordance with Article 622, may place the child in the custody of a suitable relative, other suitable individual, *or* the department.
>
> B. If a child is not returned to the parents, the court shall place the child in the custody of a suitable relative unless the court has made a specific finding that such placement is not in the best interest of the child. The court shall give specific oral and written reasons for its findings, which shall be made a part of the record of the proceeding.

G.O. *was* placed in the physical custody of an individual considered to be a suitable relative–S.B., his paternal grandfather, who already had legal custody of him. Louisiana Children's Code Article 672 precludes placing a child in *both* the custody of DSS and the custody of a relative. It sets forth in pertinent part:

> A. Whenever custody of a child is assigned to the Department of Social Services, the child shall be assigned to the custody of the department rather than to a particular placement setting. The department shall have sole authority over the placement within its resources and sole authority over the allocation of other available resources within the department for children judicially committed to its custody.
>
> B. *The court shall not divide legal and physical custody whenever assigning custody to a department in accordance with this*

*Article, Articles 619, 622, 627, 681, 700, or 716, or any other statute or provision of law.*

*Id.* (Emphasis added.)

It is clear that by granting legal custody of G.O. to DSS and physical custody of G.O. to S.B., the trial court violated the express prohibition against "splitting" custody set forth in Article 672. We addressed this issue in *N.B. v. State*, *Dept. of Social Services,* 94-647 (La. App. 3 Cir. 11/2/94), 649 So. 2d 591, and specifically held that a trial court *cannot* split custody and is prohibited from awarding legal custody to the state and physical custody to a parent. This issue was revisited in *State ex rel. G.R.,* 06-453 (La. App. 3 Cir. 9/27/06)*,* 940 So. 2d. 873, where this court said the trial court lacked the authority to enter an order dividing legal and physical custody between DSS and the child's maternal grandparents. *See also, State ex rel. C.H.*, 06-336 (La.App. 3 Cir. 9/27/06), 939 So.2d 732.

In *Wade v. Wade*, 362 So. 2d. 1151, 1154 (La. App. 2 Cir. 1978), the court addressed a juvenile court's jurisdiction in such a situation, explaining:

> The jurisdiction of juvenile courts to make an "informal adjustment" is predicated on the necessity for immediate action to protect the child. Once the "immediate protection" phase of the situation is over, the juvenile court has no jurisdiction to award custody [u]nless there has been a petition filed and the child has been declared neglected, abused, abandoned, or delinquent. . . .

An obvious difference exists between the situation addressed in *Wade* and the situation presented here: a petition was filed here. However, the report of abuse to DSS was made by a relative with whom the child was residing, who was a legal custodian and who was providing a safe environment for the child. Accordingly, once the "immediate protection phase" passed, and it passed quickly, and G.O. was in no danger, the trial court's authority ended. *Id.*

7

What we have here, in effect, is the entry of an improper Instanter Order to "remove" a child, who was in fact never removed, from the home of a non-perpetrator, legal guardian relative where the child was not at risk of harm. This "removal" was followed by an illegal division of custody between DSS and S.B., as G.O. was never in the physical custody of DSS. Although DSS certainly had grounds to investigate this complaint, when it became apparent that G.O. was in a safe environment with a legal guardian, this matter should have been handled by law enforcement and through family court.

Not every abuse complaint requires the oversight of DSS. If that was the case, a custodial parent who reports suspected abuse by a non-custodial parent is subject to having the child removed from his or her custody for reporting the abuse. The same would be true if the parents share joint custody of the child.

DSS filed a Petition for Termination of Parental Rights and Certification for Adoption, stating that it is proceeding under the authority of La.Ch.Code art. 1004(D). This article provides:

> The department may petition for the termination of parental rights of the parent of the child when any of the following apply:
>
> (1) The child has been subjected to abuse or neglect after the child is returned to the parent's care and custody while under department supervision, and termination is authorized by Article 1015 (3) (j).
>
> (2) The parent's parental rights to one or more of the child's siblings have been terminated due to neglect or abuse and prior attempts to rehabilitate the parent have been unsuccessful, and termination is authorized by Article 1015 (3) (k).
>
> (3) The child has been abandoned and termination is authorized by Article 1015 (4).
>
> (4) The child has been placed in the custody of the state and termination is authorized by Article 1015(5).

8

(5) The child is in foster care because the parent is incarcerated and termination is authorized by Article 10159 (6).

Article 1004(D)'s authorization for DSS to proceed to termination of parental rights is premised on the fact that the minor child at issue is actually in the custody of DSS. Indeed, La.Ch.Code art 1004.1 specifically states:

> The department shall file and pursue to judgment in the trial court a petition to terminate the parental rights of the parent or parents if the child has been in state custody for seventeen of the last twenty-two months, unless the department has documented in the case plan a compelling reason why filing is not in the best interest of the child.

"[T]his State's legislature has imposed statutorily strict procedural and evidentiary requirements which must be met before issuance of a judgment terminating parental rights." *State in the Interest of JL, DL, & SL*, 93-352, p. 6 (La. App.3 Cir. 5/18/94), 636 So.2d 1186, 1191, *overruled on other grounds by State in the Interest of ML & PL*, 95-45 (La. 9/5/95), 660 So.2d 830. DSS has not clearly established that G.O. was actually properly placed in its custody in accordance with the law. It also has established that even if we accept the abuse allegations as true, G.O. was never at risk of harm, as would justify his placement into state custody. Therefore, we do not find these procedural requirements have been met.

**DISPOSITION**

For these reasons, we find, under these facts, that the State, through the Department of Social Services, lacks standing to proceed in this matter and, *sua sponte*, find it has no right of action in this matter.[1] The judgment granted by the trial court is hereby vacated, and the Petition for Termination of Parental Rights and

---

[1]*See* La.Code Civ.P. art. 927; *see also, Succession of Comeaux*, 04-1335 (La.App. 3/2/05), 896 So.2d 1223.

9

Certification for Adoption filed by the State through the Department of Social Services is dismissed.

This matter is remanded to the trial court.  S.B. is hereby granted sole custody of G.O. pending further action of that court.

**JUDGMENT VACATED; REMANDED WITH INSTRUCTIONS.**

NUMBER 10-571

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

STATE OF LOUISIANA IN THE INTEREST OF G.O.

AMY, J., dissenting.

I respectfully dissent from the majority as I find that the trial court's and the State's actions are supported by the record. The majority recognizes that the factual background is unusual in this case. In my opinion, this unusual factual background has caused confusion regarding initial custody of the child and, in turn, who has had custody of the child during the pendency of this matter. My view is that it has also caused confusion throughout these proceedings as to who are the parties to the matter. In short, the grandparents are not parties in this case, although they have been represented and have made certain appearances herein.

As noted by the majority, the record contains a January 2004 "consent judgment" that resulted from a petition for custody, filed in another proceeding, by G.O.'s father. In that document, G.O.'s parents seemingly agreed that they, along with G.R. and S.B., would share "joint custody" over the child and that G.R. would "be named as the domicile [sic] parent." Although this consent judgment does not seemingly comply with the detailed procedures set forth by La.Ch.Code art. 1510, *et seq.*, or those anticipated for the authorization of provisional custody by mandate anticipated by La.R.S. 9:951, *et seq.*, I do not consider the legality of that document. However, given its exceptional characteristics, I do not assume that this document provided the grandparents with joint legal custody over this child, certainly not as of the time that this matter was instituted in 2007. Such an assumption as to the custodians of this child blurs the line as to the identity of the parties. The petition seeking an adjudication of G.O. as a child in the need of care lists the parents, not the

grandparents.

Instead, my review of the proceedings indicates that both the State and the trial court properly recognized that this was a case in which the State pursued and obtained custody from the parents. Although the child resided with the grandparents and was ultimately *placed* there with consent of the State, I believe that this was never a recognition as to the joint legal custodianship with the grandparents. Instead, as early as the July 31, 2007 hearing, at which the 72 Hour Instanter Order was considered, the minutes indicate that "the parties stipulated to continued *custody with the State of Louisiana* and that the child [would] be *placed with the paternal step-grandparents*[.]" (Emphasis added.)

This distinction prevents me joining in the majority opinion. In light of its recognition of S.B. as a legal custodian, the majority finds that there is no basis for the "child in need of care" determination pursuant to La.Ch.Code art. 606. Notwithstanding the dictates of Article 606, La.Ch.Code art. 647 permits a stipulation as to whether a child is in need of care with or without admitting the allegations of the petition. Here, the court minutes reflect that, ultimately, "all parties stipulated that the child is in need of care without admitting the allegations of the petition."

Furthermore, I do not read the minutes as indicating that this is a case where *the court* divided the legal and physical custody of the child as prohibited by La.Ch.Code art. 672. Rather, the minutes indicate that the court did, in fact, place the child in the custody of the State pursuant to Article 672(A). It did not place the child in the custody of a particular placement setting as is prohibited by Paragraph A nor did it divide legal custody and physical custody as is prohibited by Paragraph B. Custody, at all times, remained with the State. The parties merely approved of the "placement" with the "paternal step-grandparents[.]" I see no court intervention in

2

this placement as is prohibited by Paragraph B and find no prohibition within the Article for the State to be able to exercise its "sole authority over the placement" with this type of agreement. *See* La.Ch.Code art. 672(A).

For these reasons, I do not find error in the issuance of the Instanter Order. I respectfully dissent from the majority in this regard. It follows, that a decision on the merits is warranted. Accordingly, I dissent.