1 .THIBODEAUX, Judge.
J.C.B. appeals the trial court’s termination of his parental rights regarding his minor children pursuant to Louisiana Children’s Code Article 1015. The trial court terminated his rights after finding that he is incapable of parenting and that reformation is unlikely. We find that the record supports the termination of parental rights and affirm the trial court’s judgment.
*628 I.

ISSUE

J.C.B. asks that we find the trial court erred in concluding that J.C.B. did not comply with his case plan and failed to demonstrate reformation significant to prevent termination of his parental rights.
II.

FACTS AND PROCEDURAL HISTORY

This parental termination case originally concerned six children, all having the same mother and two different fathers. L.A.B., the mother, was first married to D.B. The couple had four children who are among the subjects of this termination: T.L.B., a girl born on November 11, 1982; K.R.B., a girl born on April 4, 1987; J.N.B., a girl born on August 21, 1989; and D.W.B., a boy born on May 25, 1984. L.A.B.’s second husband is the appellant, J.C.B. The two minor children of L.A.B. and J.C.B., who are also the subjects of this termination, and the subjects of this appeal, are: J.J.B., a boy born on October 31, 1994; and M.A.B., a girl born on October 6, 1997. Parental rights to all of the children were terminated at the hearing Ron June 30, 2000. Only two children, M.A.B. and J.J.B., are the subject of this appeal by their biological father, J.C.B.
L.A.B. and D.B. separated in 1992. In 1993 L.A.B. began living with the appellant, J.C.B. Her children from her earlier marriage to D.B. went to live with them. On November 17, 1995, three children of the J.C.B. and L.A.B. household came into custody of the Department of Social Services (DSS) on the grounds of physical abuse. These children included: (1) T.L.B., L.A.B’s child by her first husband, D.B., and (2) R.B. and D.B. who are J.C.B.’s biological children from a prior marriage. At the time that they were brought into the custody of DSS, they were minors and were living with the family. They have now reached the age of majority and are no longer wards of the State.
On March 17, 1997, four more children from the L.A.B. and J.C.B. household were brought into DSS’s custody on the grounds of physical abuse, passive abuse, and emotional maltreatment. They were: three of D.B.’s children, K.R.B., D.W.B., J.N.B., and J.C.B.’s son, J.J.B. All had been living with the appellant and L.A.B. These children were adjudicated in need of care on April 29, 1997. M.A.B. was removed from the home on October 20, 1997, two weeks following her birth. She was adjudicated in need of care on November 12, 1997. M.A.B. was removed just after birth as a precautionary measure because DSS had determined that none of the problems which had led to the rest of the children being removed from the home had been resolved. DSS did not find that the parents had cooperated or participated in the treatment plans which were deemed necessary by DSS for a safe return of the children to the home. These children all remain in DSS’s custody. On January 14, 2000, DSS filed a Petition for Termination of Parental Rights. The case was heard Rand a judgment terminating parental rights was granted by the trial judge on June 30, 2000. J.C.B. is appealing the termination of his parental rights to M.A.B. and J.J.B.
III.
LAW AND DISCUSSION Standard of Review
Whether a termination of parental rights is warranted is a question of fact. State in the Interest of K.N.F., 96-390 (La.App. 3 Cir. 7/17/96); 677 So.2d 166. A trial court’s factual determinations as to whether there has been substantial compliance with a case plan or whether a signifi *629 cant substantial indication of reformation has been shown and whether the parent is likely to reform will not be set aside absent manifest error. State in the Interest of Clarence Broussard, Jr., 94-1613 (La.App. 3 Cir. 5/3/95); 657 So.2d 121. An appellate court’s standard of review of a judgment terminating parental rights is whether or not the record reflects that the trial judge was clearly wrong. State in Interest of J.L., 93-352 (La.App. 3 Cir. 5/18/94); 636 So.2d 1186.
Burden of Proof
The law is well-established that a parent has a constitutionally protected liberty interest in establishing and maintaining a meaningful relationship with his or her children. State in the Interest of A.C., 93-1125 (La.1/27/94); 643 So.2d 719; cert. denied, A.St.P.C. v. B.C., 515 U.S. 1128, 115 S.Ct. 2291, 132 L.Ed.2d 292 (1995). Louisiana jurisprudence has long recognized that the biological parents’ rights to them children and the children’s reciprocal rights are preeminent among relationships in the human family. See In re Adoption of B.G.S., 556 So.2d 545 (La.1990). The parent’s constitutionally protected liberty interest includes a right to the companionship, care, |4custody, and management of his or her children. Lassiter v. Dept. of Social Services, 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981). Thus, the interest of a parent in an accurate determination of any decisions that will terminate all of his or her parental rights permanently is a “commanding one.” Lassiter, 452 U.S. at 27, 101 S.Ct. at 2160.
However, more than simply protecting parental rights, our judicial system is required to protect the children’s rights to thrive and survive. State in Interest of S.M., 98-0922 (La.10/20/98); 719 So.2d 445; on remand, 99-0526 (La.App. 4 Cir. 4/28/99); 733 So.2d 159, writ denied, State ex rel. S.M., 99-2127 (La.7/21/99); 747 So.2d 36. A child has an interest in the termination of parental rights that prevent adoption and inhibit that child’s establishment of secure, stable, long term, continuous family relationships. Id. The child has a profound interest in being in a home where she will receive proper parental care. Lehman v. Lycoming County Children’s Servs. Agency, 458 U.S. 502, 102 S.Ct. 3231, 73 L.Ed.2d 928 (1982). See also State in the Interest of S.M ., 719 So.2d 445.
 Because the termination of parental rights is a serious and terminal action, the State must satisfy an onerous burden of proof in order to terminate these rights. In the Interest of L. v. A.S., 94-1316 (La.App. 3 Cir. 2/1/95); 649 So.2d 1183. That is, the State must establish each element of a ground for termination of parental rights by clear and convincing evidence. La.Ch.Code art. 1035(A); State in Interest of L.L.Z. v. M.Y.S., 620 So.2d 1309 (La.1993). Pursuant to this standard, the State must show that the parent’s failure to comply with the enumerated condition is highly probable. State in the Interest of Q.P., 94-609 (La.App. 3 Cir. 11/2/94); 649 So.2d 512. If the trial court finds that the alleged grounds set out in any paragraph of Article 1015 are proven under the evidentiary standards required by Article 1035, and that it is in the best interest of the child to terminate, it shall order the termination of |Rthe parental rights of the parent against whom the allegations are proven. La.Ch.Code art. 1037.
Grounds For The Involuntary Termination of Parental Rights
The trial court terminated J.C.B.’s parental rights under Louisiana Children’s Code Article 1015(5) which provides that *630 parental rights may be terminated if the following grounds are proven:
Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent’s custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent’s condition or conduct in the near future, considering the child’s age and his need for a safe, stable, and permanent home.
La.Ch.Code art. 1015(5).
Thus, for termination under this subsection, the Department must prove all of the following elements: (1) that J.J.B. and M.A.B. have been in the custody of DSS for at least one year; (2) that appellant did not substantially comply with the court-approved case plans; and (3) that appellant’s improvement in the near future is unlikely. The minimum standard of proof in termination of parental rights cases is by clear and convincing evidence. La.Ch.Code art. 1035(A). See also Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). Although the State need only prove that the grounds for termination exist under one subsection of Article 1015, all elements of that subsection must be met. The appellant assigns as error the trial judge’s finding that he did not comply with his case plan and failed to demonstrate reformation significant to prevent termination of his parental rights. There is no |fiallegation that the statutory requirement of one year had not been met. Indeed, at the time of the filing of the petition, J.J.B. and M.A.B. had been in the custody of DSS for almost three years. J.J.B. was removed from the home on March 17, 1997, on the grounds of physical abuse, passive abuse, and emotional maltreatment, and was adjudicated a child in need of care on April 29, 1997. M.A.B. was removed from the home on October 20, 1997, two weeks following her birth, and was adjudicated a child in need of care on November 12, 1997. They have remained in the custody of DSS since that time. The petition for termination of parental rights was filed on January 14, 2000, more than two years later. Therefore, the statutory requirement of twelve months is satisfied.
Substantial Compliance with Case Plan
The State alleged that J.C.B. had repeatedly failed to comply with the required program of treatment and rehabilitation services provided in the case plan. Reformation requires that a parent demonstrate significant improvement in the conditions that served as the basis for the removal of the children from the home. State in the Interest of Broussard, 94-1613 (La.App. 3 Cir. 5/3/95); 657 So.2d 121. “A parent who professes an intention to exercise his or her parental rights and responsibilities must take some action in furtherance of the intention to avoid having those rights terminated .” State in Interest of S.M., 98-0922, p. 9 (La.10/20/98); 719 So.2d 445, 450 (quoting State in Interest of J.M., 30,302, p. 7 (La.App. 2 Cir. 10/29/97); 702 So.2d 45, writ denied, 97-2924 (La.2/6/98); 709 So.2d 736).
In April of 1997, following the removal of four children from the L.A.B. and J.C.B. household, state caseworkers developed a case plan in order to facilitate the parents’ reunification with the children, as required by law. In June, 1997, a court |7order prohibiting J.C.B. and L.A.B. from having any contact whatsoever with the children, their caretakers, or with agency staff due to threats by the parents against the staff *631 was put into effect. The agency began contact with the parents again around October, 1997 when M.A.B. came into state custody. The case plan put into effect in March of 1998 required J.C.B. to acknowledge his substance abuse and his physical and sexual abuse of the children. This remained the case plan in effect at the time of the termination hearing. Thus, J.C.B. was required to undergo substance abuse counseling, parenting and psychological evaluations.
The standard for validation of a complaint of sexual or physical abuse by DSS is different than the standard for criminal charges. That is, criminal charges must be proved beyond a reasonable doubt whereas DSS’s standard, that of clear and convincing evidence, is significantly less onerous. Although J.C.B. has never been convicted of either a sex crime or a crime of violence, there appears to be clear evidence of a pattern of such type of behavior. As proof of J.C.B.’s pattern of sexual abuse of the female- children in his care, DSS offered the testimony of several social workers who have been closely involved with the family. In November of 1995, there was a complaint of physical abuse against J.C.B. involving T.B., a male child, and R.B. and D.B., two female children. These children were removed from the home and placed in foster care. According to Denise Lessert, a social worker with OCS in Iberia Parish, the two girls have at various times indicated and recanted sexual and physical abuse by the appellant.
Additionally, three of the four female children of J.C.B.’s current wife, L.A.B., who are the subject of this proceeding, have made allegations of sexual abuse against J.C.B. These girls have not recanted. Instead, they have been consistent and stood by their allegations. Social workers testified that the girls’ stories of abuse were |Rconsistent and corroborated each other. Loula B. Savoy, an investigator for the Iberia Parish Office of Community Services, became involved with this family in February of 1997, in the course of investigating allegations of physical abuse and dependency of J.J.B. She interviewed several of the children and testified that they alleged the appellant had had sexual relations with his elder daughters, T.B., R.B., and D.B., who in 1997 were teenagers but are all currently eighteen years of age or older. The appellant was also alleged by the children to have had sexual relations with his step-daughters, T.L.B., K.R.B., and J.N.B., who, at the time of the allegations in 1997, were fifteen, ten, and eight years of age, respectively. Ms. Savoy interviewed the children individually and stated that she found their allegations to be very consistent and credible. The complaints were subsequently validated and turned over to law enforcement authorities.
Christine Dugas, a licensed clinical social worker, also testified for DSS concerning the sexual abuse by the appellant against K.R.B. Ms. Dugas had been contacted by OCS in 1997 to provide individual therapy to K.R.B. and J.N.B. Ms. Dugas testified that K.R.B., born in 1987 and ten years old when Ms. Dugas began counseling her, told Ms. Dugas that J.C.B. had sexually abused herself and all of the female children in the house. Additionally, K.R.B. stated that she was sexually abused in the household by her young adult stepbrother, J.B., III and her brother, D.W.B. K.R.B. also informed Ms. Dugas that the appellant physically abused family members, stating that J.C.B. had kicked his wife, L.A.B. in the face and stepped on her stomach while she was pregnant. J.N.B., born in 1989, was eight years old at the time of her counseling sessions with Ms. Dugas and suffering from depression as well as a number of behavior problems including physical aggression. She also *632 made a number of allegations of physical abuse, sexual abuse, and sexually inappro-priatejcjbehavior concerning J.C.B. Additionally, she alleged sexual abuse by J.C.B.’s eldest son, J.B., III and her own brother D.W.B. Her statements were corroborated by those of her sister, K.R.B. In fact, Ms. Dugas testified that the allegations made by the girls in the course of their individual therapy were very consistent in their details.
As a result of these allegations, the appellant was arraigned on charges of simple battery, molestation of a juvenile, and aggravated incest, later amended to be aggravated rape in 1997. At a later bond hearing, the incest charge was dropped because of the child’s recantation and a time restraint relative to the filing of the bill of information. There was testimony at the termination hearing that other pending criminal charges for the sex offenses against J.C.B. were nolle prossed; however, there was no evidence of a dismissal in the record. According to the trial judge, the criminal case has merely been deferred pending the termination hearing and a reevaluation by the district attorney as to the strength of the state’s case. This was because the older girls, T.L.B. and R.B., had recanted their allegations of sexual abuse against the appellant. However, the evidence showed that their recantations came following contact and probable intimidation by the appellant’s son and step-son with the girls in spite of an express order by the trial judge that the girls- not be contacted. According to the evidence, R.B., the child who was to testify, was in contact with her father and apparently was persuaded to recant in order to keep him out of prison. The younger girls have never recanted their allegations against the appellant. In fact, K.R.B. and J.N.B. both testified as to the sexual abuse by the appellant at the termination hearing and stated that they feared being returned to his care and custody.
The State has admitted that J.C.B. completed his substance abuse counseling. He attended a psychological evaluation by Dr. Ed Bergeron, a |inpsychologist, as required. Dr. Bergeron found J.C.B. to be highly prone to physical and emotional abuse and in need of intense psychotherapy to address his tendency toward aggression. There is no evidence in the record that J.C.B. has addressed this problem. Nor has he admitted to being a sexual perpetrator or taken part in any of the sexual abuse perpetrator group sessions, as required by the case plan. He alleges that this is in part due to his attorney’s advice against doing so while criminal charges of sexual abuse have been pending against him. However, J.C.B. has also denied that he has been physically abusive and violent towards his family members and others. For example, J.J.B. initially came into custody of DSS because of allegations that J.C.B. had picked him up and thrown him, at the age of three, against a wall. Although these allegations were validated by social workers, J.C.B. has never admitted to doing so. In fact, at the termination hearing he testified that he would never hurt his son.
Therefore, in light of the abundance of testimony regarding the appellant’s predatory behavior, we find that there was sufficient evidence presented at the termination hearing for the trial judge to find that J.C.B. had sexually abused his daughters and step-daughters.
Likelihood of Reformation in the Future
The State alleged there was no reasonable expectation of significant improvement in J.C.B.’s condition or conduct in the near future. The reasons given for this allegation, among others, included: (1) *633 J.C.B.’s failure to comply with the required program of treatment and rehabilitation services provided in the case plan; (2) J.C.B.’s lack of substantial improvement in redressing the problems preventing reunification; (3) the persistence of the conditions that led to the removal; (4) mental Inillness, substance abuse, and/or chemical dependency on the part of the parent which renders him unable or incapable of exercising parental responsibilities.
The Louisiana Supreme Court has held that a reasonable expectation of reformation is found to exist if the parent has cooperated with state officials and has shown improvement, even though all of the problems that exist have not been eliminated. State in the Interest of L.L.Z. v. M.Y.S., 620 So.2d 1309 (La.1993). The likelihood of reformation is based at least in part on the parent’s compliance with the case plan. However, what is considered the reformation of a parent, for the purposes of making a finding as to whether or not parental rights should be terminated, means more than a parent’s mere cooperation with agency authorities. Instead, a showing of “a significant, substantial indication of reformation is required, such as altering or modifying in a significant way the behavior which served as a basis for the State’s removal of the child from the home.” State in the Interest of EG, 95-0018, p. 5 (La.App. 1st Cir.6/23/95), 657 So.2d 1094, 1097, writ denied, 95-1865 (La.9/1/95); 658 So.2d 1263.
The evidence showed that J.C.B. successfully completed substance abuse counseling as of 1999. He also testified that he attended Alcoholics Anonymous, although, apart from his testimony, there was no evidence of his attendance in the record. Yet, even in the face of the overwhelming evidence and testimony from the children as to his abusive behavior, J.C.B. has continued to deny that he has at anytime been at all physically or sexually abusive to his family or others. Instead, he claims to have been merely prone to yelling and bad moods. In the alternative, he argues that, if he indeed was at all ever physically abusive towards anyone, it was only because his substance abuse and depression were of such significance that they were the cause of the behavior. He argues that any anger management problems that 11ghe did have were the direct result of his drinking and, therefore, because the substance abuse treatment has been completed, the alleged abusive behavior will no longer continue.
However, this family is not the first one that J.C.B. has preyed upon and abused. In 1989 there was a validated sexual abuse complaint against J.C.B. with his child, T.B., who was the daughter of J.C.B. and D.B., his wife prior to L.A.B. At the time, that family was residing in Sabine Parish. T.B. was removed from the home at the age of fifteen due to allegations of sexual abuse. Ms. Lessert testified that J.C.B. and D.B. refused to cooperate with the Sabine Parish OCS in order to facilitate the return of T.B. to the home. There were a number of police reports filed in December of 1990 regarding J.C.B.’s violent behavior and threats. His visits with her were ultimately terminated. J.C.B. and this wife subsequently divorced and in 1993 he moved with L.A.B. to Iberia Parish.
Thus, according to the evidence, over a period of less than ten years that are in this record, J.C.B. has been abusive to at least two wives and seven children, including a male nephew. DSS has intervened and removed different children from J.C.B.’s care on at least three different occasions: in 1989, 1995, and 1997. When confronted with the overwhelming evidence of his physical and sexual abuse of these children, he continues to adamantly, *634 almost pathologically, refuse to accept responsibility for his behavior. Instead, he continues to admit to nothing more serious than drinking to excess and to having at times “a big mouth.” It seems highly doubtful to this court, given the long history of his violent and aggressive behavior, his failure to seek the proper treatment when faced with the prospect of losing his children, and the sheer number of individuals who have been physically and sexually victimized by him, that mere completion of a course of substance abuse counseling |13would be sufficient to show that there was a significant and substantial likelihood of reformation. This court is not aware of any instances where correction of a substance abuse problem alone also corrected aberrant behavior like the sexual molestation of one’s own children. Instead, explicit acknowledgment of a behavioral or psychological problem, followed by therapy specifically directed at the behaviors is essential for even a slim hope of reformation.
Unfortunately, J.C.B. is faced with a serious dilemma in this situation. If he had acknowledged the sexual abuse as required by the case plan, then he would have given the prosecution more ammunition for the pending criminal charges. J.C.B. argues that this would be tantamount to him losing his parental rights because of his refusal to incriminate himself, a clear violation of federal and state constitutional protections.
An impending criminal case against a parent will have inevitable effects on a child in need of care proceeding. When a parent is facing criminal charges he or she will naturally be hesitant to reveal any negative or incriminating behavior during all the stages of the juvenile matter. Thus, as in this case, fulfillment of crucial components of a case plan will be impossible. Even if the parent agrees to undergo the required therapy without admitting to the abuse, he will naturally be discouraged from revealing too much during treatment, even though such information should be subject to the doctor/patient privilege. It would, therefore, seem preferable that the criminal matter be completed prior to the juvenile proceeding. Given such a scenario, in the event that J.C.B. had been found guilty in the criminal case, he could have freely admitted to the maltreatment of the children and immediately begun therapy. In the event of a guilty verdict, this would also appear to be a way of saving the |14agency time and money, in that the judgment of the criminal court would apply in the juvenile matter through collateral es-toppel.
The special circumstances of this case have, however, made it difficult for DSS to await the outcome of the criminal trial. DSS has been involved with this family since at least 1989. The children whose allegations formed the basis for the institution of the original criminal charges have gone back and forth with their accusations and recantations, causing the prosecution to drop and then subsequently reinstate the charges. Those children, after spending years in an abusive situation and then a number of years in foster homes, are now the age of majority and, for better or worse, out of the hands of DSS. The two children who are the subject of this appeal have been in foster care since 1997, J.J.B. since the age of three and M.A.B. virtually since her birth. They appear to be doing well with their foster families. Given their young ages, they are still good candidates for adoption, unlike the rest of the children in this case.
A consideration of the best interests of J.C.B., would require us to reverse the termination and remand this case to allow the criminal trial to proceed. If appropriate, J.C.B. would then be able *635 to admit to the abuse and begin therapy in order to comply with the case plan. However, a number of years would pass in the interim with the children remaining in foster care. Moreover, the best interests of the parent is not the standard we apply in such a case. When the grounds for termination have clearly already been met, as they have here, we must consider whether termination is in the best interest of the children. It is clear that in this case, the best interests of the children require that we affirm the termination and certification for adoption.
| ^Further, even if J.C.B. were eventually found not guilty in the criminal case, he would not necessarily stand to benefit. A finding of abuse in a juvenile matter only requires a standard of clear and convincing evidence whereas the criminal standard of beyond a reasonable doubt is significantly more onerous. In this case, for the purposes of carrying the burden to justify a termination of parental rights, DSS has brought forward overwhelming evidence of J.C.B.’s systematic and continuing pattern of physical and sexual abuse of the children as well as his intimidation and violent behavior directed at his wives and social workers. It appears to us from a careful review of the record, that, even if the State were to drop the criminal charges, or if the case were to go to trial and J.C.B. were found not guilty, that, based on the evidence of J.C.B.’s history we find in the record, there would be little if any hope for his reformation. Moreover, several years would have passed by that time and J.J.B. and M.A.B. would be significantly older and far less likely to be adopted and finally find a stable home life with a loving, nurturing family.
In its reasons for ruling, the trial court stated:
There hardly can be a clearer case for termination of parental rights than this. This is some of the most devastating testimony that this court has heard concerning a long history of sexual abuse, alcoholism, and physical abuse without remedy, affecting the lives of one, two, three, four five, six young ladies. And though there was no testimony concerning physical or sexual abuse of [J.B., III] or the stepson [D.W.B.] there was testimony concerning physical abuse validated on the part of [J.C.B.] against young [J.J.B.]. [M.A.B.] was removed when she was born so there was no problem there.
[J.C.B.] to this day has denied sexual abuse and to this day has denied any serious physical abuse of the children, only saying that he was loud and boisterous and drank too much.
.... [T]he court has no alternative at this stage other than to terminate [J.C.B. and L.A.B.]’s parental rights |1fias to all of these children. More than ample opportunity has been given since 1989 for reformation. And though some attempts have been made by [J.C.B. and L.A.B.] at alcohol treatment, the proof of abstinence is lacking even today and no A.A. meetings being attended and no proof that the parties are indeed alcohol-free even now. And even if there were, the complaints of sexual molestation are so serious and so grave and of such long standing that the court could not consider returning [M.A.B., K.B. and J.B.] to [J.C.B.]....
After a thorough review of the record before us, we cannot agree more strongly with the trial judge’s decision and reasons for ruling. A parent has the responsibility of caring for and nurturing his children, protecting them and assisting them in becoming stable and emotionally healthy adults. Instead, J.C.B. has wreaked havoc upon the lives of at least eleven children, including his four step-children, his six biological children; and a nephew. He has *636 acted as the worst sort of predator upon those very young innocents who looked to him with trust and unconditional love. We can only hope that these children will recover from the horrible victimization to which they have been subjected and eventually lead reasonably happy and well-adjusted lives rather than continue this cycle of destruction. Unfortunately, the prognosis for the older children is less than rosy. The allegations by the girls against J.C.B.’s son and step-son show they have already been continuing the pattern of behavior they have learned from their parents by sexually abusing their sisters, half-sisters, and step-sisters.
For the foregoing reasons, the judgment of the trial court terminating the parental rights of J.C.B. in relation to J.J.B. and M.A.B. is affirmed. They are now eligible and available for adoption. To the extent allowed by law, all costs are assessed to the appellant, J.C.B.
AFFIRMED.