# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT


## 10-571


## STATE OF LOUISIANA IN THE INTEREST OF G. O.


## ON REMAND FROM THE
## LOUISIANA SUPREME COURT

**\*\*\*\*\*\*\*\*\*\***


## APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF VERMILION, NO. 2007 JU 234
HONORABLE DURWOOD W. CONQUE, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***


## MARC T. AMY
## JUDGE

**\*\*\*\*\*\*\*\*\*\***


Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, John D. Saunders, Marc T. Amy, and Elizabeth A. Pickett, Judges.

**AFFIRMED.**


**Jo Ann Nixon**
**Glenda August & Associates**
**129 W. Pershing Street**
**New Iberia, La   70560**
**(337) 369-7437**
**COUNSEL FOR APPELLANT:**
**M. L.**

**Reule P. Bourque**
**Post Office Box 127**
**Kaplan, LA   70548**
**(337) 643-8686**
**COUNSEL FOR APPELLEES:**
**G. R. and N. R.**

**Gregory Bryan Dean**
**Dean Law Office**
**Post Office Drawer 280**
**Opelousas, LA   70571-0280**
**(337) 942-5111**
**COUNSEL FOR APPELLEES:**
 **S. B. and K. B.**

**Diane Elaine Cote**
**825 Kaliste Saloom Road**
**Brandwine I, Room 218**
**Lafayette, LA   70508**
**(337) 262-1555**
**COUNSEL FOR APPELLEE:**
 **State of Louisiana, Department of Social Services**

**Nicole M. Guidry**
**Two South Magdalen Square**
**Abbeville, LA   70510**
**(337) 740-8885**
**COUNSEL FOR APPELLEE:**
 **R. O.**

**Bart A. Broussard**
**209 E. St. Victor**
**Abbeville, LA   70510**
**(337) 893-1705**
**COUNSEL FOR APPELLEE:**
 **G. O.**

AMY, Judge.

The State instituted proceedings against the appellant, M.L.,[1] seeking to terminate her parental rights. After a trial, the trial court entered judgment terminating M.L.'s rights. M.L. appealed, asserting that the trial court erred in: (1) finding that she did not substantially comply with her case plan; (2) terminating her parental rights; (3) finding that termination was in the best interests of the child; (4) failing to monitor the actions of the State to assure that the trial court's orders regarding reunification were followed; and (5) permitting certain placement of the child while he was in the State's custody. This court vacated the judgment of the trial court on procedural grounds and remanded the matter to the trial court for further proceedings. The Supreme Court of Louisiana granted the State's writ application and remanded the matter to this court for consideration of the merits of M.L.'s appeal. We affirm.

**Factual and Procedural Background**

The record indicates that M.L. is the mother of the minor child, G.O., born on July 12, 2003. M.L and R.O., G.O's father, entered into a "consent judgment" on March 3, 2004, which provided that custody of G.O. would be shared by his paternal step-grandfather (S.B.), maternal grandmother (G.R.), biological mother (M.L.), and biological father (R.O.). The record indicates that, in practice, G.O. stayed with S.B. during the week and with G.R. on the weekends. On July 13, 2007, the Louisiana Department of Social Services, Office of Community Services of Vermilion Parish (OCS) received a report that G.O. was being sexually abused by G.R.'s husband, N.R.

---

[1] Pursuant to the Uniform Rules-Courts of Appeal, Rules 5-1 and 5-2, the initials of the parties will be used to protect and maintain the privacy of the minor child involved in this proceeding.

G.O. was placed in the legal custody of the State on July 27, 2007, and subsequently adjudicated a child in need of care.

Thereafter, case plans were implemented for M.L. and R.O. in order for them to work towards reunification with G.O. However, on April 22, 2009, the State filed a Petition for Termination of Parental Rights and Certification for Adoption, alleging termination was justified due to the parents' failure to substantially comply with their respective case plans. The State further asserted that there was no reasonable expectation of significant improvement in the parents' conduct in the near future.

After a two-day trial, the trial court executed judgment terminating M.L's and R.O's parental rights with regard to G.O.

M.L. appealed,[2] asserting as error:

1. The Appellant assigns error to the actions of the trial court in terminating the [sic] her parental rights . . . for substantial non-compliance when she had complete[d] several components of the case plan and was actively involved in mental health treatment.

2. The Appellant assigns error to the actions of the trial court in terminating her parental rights where there had been improvement and expectation for further improvement with appropriate and adequate treatment.

3. The Appellant assigns error to the actions of the trial court in finding that termination was in the best interest of the child considering the relation of the child to his mother.

4. The Appellant assigns error to the actions of the trial court in failing to monitor the actions of the state to assure that the order[s] of the court directed toward reunification of the child with his mother were followed.

5. The Appellant assigns error to the placement of the child during the term that the child was in the care of the state with the reporting party.

---

[2] R.O. has not joined in this appeal and thus the termination of his parental rights as to G.O. will not be discussed herein.

However, on review, this court vacated the judgment of the trial court on procedural grounds and remanded the case to the trial court for further proceedings. *State in the Interest of G.O.*, 10-571 (La.App. 3 Cir. 12/22/10), 54 So.3d 782, *rev'd and remanded*, 11-499 (La. 4/25/11), __ So.3d __. Thereafter, the Louisiana Supreme Court granted the State's writ application, vacating this court's judgment and remanding the matter to this court for consideration on the merits. *See State in the Interest of G.O.*, 11-499 (La. 4/25/11), __ So.3d __.

Therefore, we now consider M.L.'s assignments of error.

**Discussion**

*Burden of Proof*

In order to terminate one's parental rights the State must first prove, by clear and convincing evidence, the existence of at least one ground for termination under La.Ch.Code art. 1015. La.Ch.Code art. 1035(A). *See also Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388 (1982). After the State establishes at least one statutory ground for termination, the trial court must also find that termination is in the best interests of the child. La.Ch.Code art. 1039.

*Grounds for Termination*

In the present case, M.L.'s parental rights were terminated pursuant La.Ch.Code arts. 1015(5), 1036(C), and 1036(D). The trial court, in its judgment, stated that M.L.:

> [Has] failed to substantially comply with [her] respective case plan including but not limited to failing to have and maintain stable housing with a drug free environment, failing to maintain stable employment, failing to complete drug treatment aftercare, failing to maintain sobriety/drug free life, continued problems with the criminal justice system by the mother, lack of bonding between the mother and child, [and] a pattern of behavior by the mother that is unsafe for the child and clearly not in his best interest; that there is no reasonable expectation of

3

significant improvement in said parents' condition or conduct in the near future; that termination of the parents' parental rights is in the best interest of the minor child[.]

In her first three assignments of error, M.L. argues that the trial court erred in terminating her parental rights under La.Ch.Code art. 1015(5). She first questions the determination that she did not substantially comply with her case plan when "she had complete[d] several components of the case plan and was actively involved in mental health treatment." She also contends that "there had been improvement and expectation of further improvement with appropriate and adequate treatment." Finally, in her third assignment of error, M.L. disputes the finding that "termination was in the best interest of the child considering the relation of the child to the mother."

Louisiana Children's Code Article 1015(5) provides that:

Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent's custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent's condition or conduct in the near future, considering the child's age and his need for a safe, stable, and permanent home.

Louisiana Children's Code Article 1036(C) sets forth the evidence which may be considered in determining whether there is a lack of compliance with the case plan under Article 1015(C). It states, in pertinent part:

(1) The parent's failure to attend court-approved scheduled visitations with the child.

(2) The parent's failure to communicate with the child.

(3) The parent's failure to keep the department apprised of the parent's whereabouts and significant changes affecting

4

the parent's ability to comply with the case plan for services.

(4) The parent's failure to contribute to the costs of the child's foster care, if ordered to do so by the court when approving the case plan.

(5) The parent's repeated failure to comply with the required program of treatment and rehabilitation services provided in the case plan.

(6) The parent's lack of substantial improvement in redressing the problems preventing reunification.

(7) The persistence of conditions that led to removal or similar potentially harmful conditions.

Further, La.Ch.Code art. 1036(D) provides that a lack of any reasonable expectation of significant improvement under La.Ch.Code art. 1015(5) may be evidenced by one or more of the following:

(1) Any physical or mental illness, mental deficiency, substance abuse, or chemical dependency that renders the parent unable or incapable of exercising parental responsibilities without exposing the child to a substantial risk of serious harm, based upon expert opinion or based upon an established pattern of behavior.

(2) A pattern of repeated incarceration of the parent that has rendered the parent unable to care for the immediate and continuing physical or emotional needs of the child for extended periods of time.

(3) Any other condition or conduct that reasonably indicates that the parent is unable or unwilling to provide an adequate permanent home for the child, based upon expert opinion or based upon an established pattern of behavior.

Substantial Compliance with Case Plan

A trial court's factual determinations as to whether there has been substantial compliance with a case plan, whether a significant indication of reformation has been shown, and whether the parent is likely to reform will not be set aside unless the

5

record reflects that the trial court was clearly wrong. *State ex rel. T.L.B.*, 00-1451 (La.App. 3 Cir. 4/4/01), 783 So.2d 626.

In its judgment, the trial court found that M.L. had failed to comply with her case plan by:

> failing to have and maintain stable housing with a drug free environment, failing to maintain stable employment, failing to complete drug treatment aftercare, failing to maintain sobriety/drug free life, continued problems with the criminal justice system by the mother, lack of bonding between the mother and child, [and] a pattern of behavior by the mother that is unsafe for the child and clearly not in his best interest.

The trial court issued lengthy reasons for judgment, which further discuss the trial court's concern over M.L.'s housing and employment. The reasons for jdgment state:

> [M.L.] has not maintained stable housing. She's lived from pillar to post with different men, some of whom have been in [sic] drugs. Now she lives in the front yard of the grandparents who were part of the source of all these problems from the very beginning.
>
> . . . . She's gone from job to job. That job that she has now is by the good graces of her mother. I'm convinced that it's all designed to help get this child back. And then what happens after that?"
>
> . . . .
>
> Her employment? I think she's made efforts at that, but there are still these aspirations and dreams that are unrealistic. I don't know that she will ever be able to complete any kind of career education or maintain any job that's not family supported for very long because of her problems with substance abuse.

In regard to housing, the State provided the testimony of Veronica Azard, M.L.'s OCS caseworker. She testified that M.L.'s housing was not "stable throughout this two-and-a-half-year period. She's kind of moved around. She has been incarcerated, and she's been in different places, so it hasn't been stable." The record reflects that M.L. lived in four residences throughout the two-and-half-year

6

period G.O. was in the State's custody, not including two periods of incarceration in November 2007 and March 2008.

With regard to employment, M.L. testified that she was working part-time at a restaurant, which her mother managed, making $7.25 an hour. M.L. testified that she was entering cosmetology school in the fall. When asked whether M.L.'s current employment would provide substantial wages to support G.O., Ms. Azard stated that it was "[p]robably not even enough to support one individual, let alone a child."

As to completing parenting classes, the record indicates that while incarcerated on a probation violation, M.L. completed a parenting class called Project Hope. Ms. Azard testified that M.L.'s case plan required she also complete a parenting program at Gulf Coast, which was not fulfilled at the time of trial. In its reasons for judgment, the trial court stated on this point:

> The parenting programs, sure, she completed a program while incarcerated. She didn't go to Gulf Coast as recommended. And its not surprising, nor is it out of character, that [M.L.] would complete a program while incarcerated. That's what she does. She straightens up, usually when she's denied access to drugs.

M.L.'s case plan required that she maintain a drug-free lifestyle which included attending Narcotics Anonymous meetings, counseling, and random drug screens. The case history of the present matter reveals that in 2007, when G.O. was first taken into the State's custody, M.L. was attending inpatient drug rehab. M.L. again entered inpatient rehab in 2009. The record reveals that in February 2008, M.L. was on probation for a drug offense. M.L. was asked to present herself for drug testing, and she refused. Consequently, she was required to place a GPS tracker on her ankle to monitor her whereabouts. In March 2008, OCS received a report that M.L. cut the GPS tracking device off her ankle, remained missing for three weeks, turned herself

7

in, and was incarcerated. OCS records indicate that M.L. admitted using drugs throughout the three weeks that she was missing.

Ted Gallagher, a counselor with Lafayette Addictive Disorders Clinic (LADC), testified that he began working with M.L. in September 2009 after M.L. had completed an inpatient drug rehab program. He explained that the LADC aftercare program consists of weekly sessions with a counselor and periodic drug screens if requested by the counselor. His testimony described M.L.'s attendance at those meetings as "sporadic." Mr. Gallagher further testified that M.L. tested positive for amphetamines and methamphetamines on January 6, 2010. Kelly Hardy, M.L.'s probation officer, testified that M.L. tested positive for methamphetamines on July 22, 2009. M.L. was also drug tested on the first day of trial in the instant case, and that test came back positive for amphetamines and methamphetamines. Ms. Azard testified that M.L. has shown "habitual noncompliance" with regard to her case plan's requirement to maintain a drug-free lifestyle. She explained that M.L.'s case plan required that she attend, at minimum, weekly Narcotics Anonymous meetings, however, M.L. only provided documentation for attendance at less than ten meetings during a two-year period of time.

The above evidence supports the trial court's determination that M.L. has not resolved her substance abuse issues. In its reasons for judgment, the trial court stated:

> I don't know if her substance abuse is just an addiction or if it's actually symptoms of something deeper, but she's played the game of doing what was asked of her to do when she knew that it counted, that it might count; but then when she thought it didn't count, she would lapse – she lapses right back into the problems.
>
> Now, I heard from her probation officer, Ms. Hardy, talk about the issues that she's had. She tested positive for methamphetamines the day of the trial, on Monday. That's a devastating indictment against any hope for rehabilitation. I mean, I would have expected, from the past,

[M.L.] to at least be clean when she was coming to see me in court, and she can't even do that anymore.

As provided in La.Ch.Code art. 1036(C), and cited by the trial court in its judgment, the failure to comply with a case plan can be evidenced in a number of ways, including proof of "[t]he parent's repeated failure to comply with the required program of treatment and rehabilitation services provided in the case plan." La.Ch.Code art. 1036(C)(5). From our review of the record as set forth above, we find no manifest error in the trial court's determination that M.L. failed to substantially comply with her case plan.

Expectation of Further Improvement

M.L. argues that termination of her parental rights is improper here, "where there had been improvement and expectation for further improvement with appropriate and adequate treatment." In its reasons for judgment, the trial court stated:

> Is there any hope for the future with [M.L.] and this child, which is the third prong? Again, Article 1036 of the Children's Code says that lack of any reasonable expectation of significant improvement can be evidenced by one or more of the following, and there are three of them: (1) is any physical or mental illness, mental deficiency, substance abuse, or chemical dependency that renders the parent unable or incapable of exercising parental responsibilities without exposing the child to substantial risk of serious harm based upon expert opinion or based upon an established pattern of behavior.

> That's what I've just finished talking about. I have tried and tried and tried over the past two years to break the behavior of substance abuse. Dr. Bergeron and Dr. Gallagher have tried. There's been counseling. It just hasn't been enough. She's been in and out of rehab. But that's not enough. There have to be results.

> And again, am I saying that [M.L.] is a bad person? No. That's not the issue. I wouldn't say it anyway. I don't think she is a bad person. I think she's got a substance abuse problems and issues, that she has demons that she's been fighting with maybe all of her life, and I

9

don't believe that she – she has not been able to overcome them. I don't think she will overcome them any time in the near future.

The second requirement is a pattern of repeated incarceration of a parent that has rendered the parent unable to care for the immediate and continuing physical or emotional needs of the child for extended periods of time. By her own admission, [M.L.] has been hindered by her efforts by incarceration. She is currently on probation. She has perhaps violated that probation. So that element is satisfied.

And thirdly, any other condition or conduct that reasonably indicates that the parent is unable or unwilling to provide an adequate permanent home based upon expert opinion or based upon an established pattern of behavior. Clearly, [M.L.'s] pattern of behavior would indicate that she just can't provide a permanent home for [G.O.] that's adequate. She just doesn't have the tools to do it. She's got to kick this addiction first before anything else happens.

I want to be very careful also in talking about substance abuse to note that I also realize that substance abuse alone may not be enough to terminate parental rights. I'm aware of that, and I'm not doing that. I'm not saying substance abuse is the reason for termination. I'm saying that substance abuse has created a pattern of behavior that is unsafe for the child, and clearly not in his best interest.

While the likelihood of reformation is based at least in part on the parent's compliance with the case plan, for the purposes of making a finding as to whether parental rights should be terminated, "the reformation of a parent means more than a parent's mere cooperation with agency authorities." *State ex rel. T.L.B.*, 783 So.2d at 633. "Instead, a showing of 'a significant, substantial indication of reformation is required, such as altering or modifying in a significant way the behavior which served as a basis for the State's removal of the child from the home.'" *Id.*, quoting *State in the Interest of EG*, 95-0018, p. 5 (La.App. 1 Cir. 6/23/95), 657 So.2d 1094, 1097, *writ denied*, 95-1865 (La. 9/1/95), 658 So.2d 1263. In light of the evidence regarding M.L.'s employment history, history of unstable housing, and continued drug use, we find no error in the trial court's determination that M.L. has not shown a significant indication that reformation is expected in the near future.

10

Best Interests of the Child

For the reasons above, we find that the record supports a finding, by clear and convincing evidence under La.Ch.Code art. 1015(5), that the statutory grounds for termination exist in this case. While only one statutory ground for termination need be proven, the trial court must also find that termination is in the best interests of the child. La.Ch.Code art. 1039. Further, the trial court is required under La.Ch.Code art. 1037 to enter written findings concerning the child's best interests and "shall include consideration of the child's attachment to his current caretakers."

As shown in its reasons for judgment, the trial court considered termination to be in G.O.'s best interests, finding that M.L.'s drug abuse "renders her unable or incapable of exercising her parental responsibilities without exposing the child to undue danger." Further, the trial court credited the testimony of Dr. Annie Spell, a licensed clinical psychologist with a specialization in child and adolescents and G.O.'s therapist, that G.O. was attached to his current caretakers.

Dr. Spell's testimony was that M.L.'s drug use disrupted the bonding that could have happened between herself and the child. She further explained that her mental health difficulties "create a lot of obstacles for her in the day-in/day-out that would be necessary in the parenting and caretaking of a child." Dr. Spell explained that G.O. had an "ideal situation" with his current caretakers "in terms of consistency of routine" which she stated "is very, very critical to young children." *See* La.Ch.Code art. 1037.

In light of the evidence regarding M.L.'s ability to care for the child and G.O.'s stability with his current caretakers, we find no error in the trial court's determination that termination of M.L.'s parental rights is in G.O.'s best interests. Therefore,

11

M.L.'s assignments of error concerning the trial court's factual findings with regard to the termination of her parental rights are without merit.

*State's Efforts to Assist in Reunification*

In her fourth assignment of error, M.L. argues that prior to termination the trial court erred in failing to monitor the actions of the State to assure that court orders directed toward reunification of the child were completed. In its reasons for judgment, the trial court addressed this argument, stating:

> [M.L.'s] attorney has eloquently argued that the State hasn't done enough to help her, that the State should have done more. Maybe they could have done more. Maybe they could have been more interested in helping her with her rehabilitation, but their requirement is reasonable efforts. Their requirement is all of the efforts that would be expected of the State in the best interest of the child.
>
> I think the State on several occasions during the last two years - has known the feelings of this court and has responded to the feelings of the Court by trying to satisfy, if not anybody else, at least the Court, to show that they were, in fact doing everything reasonably possible.

Indeed, before a parent's rights can be terminated, the record must reflect that the State must undertake reasonable efforts to assist that parent in reunification. *State ex rel. A.T.*, 06-501 (La. 7/6/06), 936 So.2d 79. In brief, M.L. provides a list of court orders it alleges were never fulfilled by the State. The record reflects that OCS sent M.L. to inpatient rehab facilities, counseling, and ordered parenting classes. M.L., however, continued to test positive for drugs, participate inconsistently in counseling, and neglected to go to the ordered parenting classes and Narcotic Anonymous meetings. In light of the record as a whole, we find no error in the trial court's determination that the State made reasonable efforts to assist M.L. in reunification with her son.

Accordingly, this assignment of error lacks merit.

*G.O.'s Placement While In State Custody*

Lastly, M.L. asserts the trial court erred in placing G.O., during the time in which he was in the custody of the State, with the party who reported the allegations of sexual abuse.[3]  The State Department of Social Services, not the trial court,  has sole authority over the placement of children within their custody, and thus it is improper for M.L. to assign G.O.'s placement as an error of the trial court. La.Ch.Code art. 672; *State ex rel. R.A.*, 06-2380 (La. 12/15/05), 944 So.2d 1262. Further, the judgment currently appealed states only that G.O. is free and eligible for adoption and is to remain in the custody of the State until G.O. is authorized for adoption, thus issues in regard to his placement are not properly before this court on appeal.

Accordingly, this assignment of error lacks merit.

### DECREE

For the foregoing reasons, the judgment of the trial court terminating the parental rights of M.L. to the minor child, G.O. is affirmed.  All costs of this appeal are assessed to M.L.

**AFFIRMED.**

---

[3] Pursuant to La.R.S. 46:56(F)(8)(b), the identity of the reporting person is confidential.