NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

21-152

STATE OF LOUISIANA

IN THE INTEREST OF Z.D.

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. JC2019-831
HONORABLE THOMAS R. DUPLANTIER, DISTRICT JUDGE

**********

**SHARON DARVILLE WILSON**
**JUDGE**

**********

Court composed of Shannon J. Gremillion, Van H. Kyzar, and Sharon Darville Wilson, Judges.

**AFFIRMED.**

**Tia Benton**
**Franchesca Hamilton-Acker**
**Acadiana Legal Services Corporation**
**1020 Surrey Street**
**Lafayette, Louisiana 70501**
**(337) 237-4320**
**COUNSEL FOR THE MINOR CHILD:**
**Z.D.**

**Diane E. Cote**
**825 Kaliste Saloom Road**
**Brandywine III, Room 150**
**Lafayette, Louisiana 70508**
**(337) 262-5913**
**COUNSEL FOR APPELLEE:**
**State of Louisiana, Department of Children and Family Services**

**Lloyd Dangerfield, Attorney at Law**
**Indigent Defenders Office**
**100 Beauvais Avenue, Suite B2**
**Lafayette, Louisiana 70509**
**(337) 896-3777**
**Counsel for APPELLEE:**
**R.L.D.S, Sr. a/k/a R.L.S. (alleged biological father of Z.D.)**

**Corrie R. Gallien**
**Corrie R. Gallien Esquire, Attorney at Law**
**600 Jefferson Street, Suite 901**
**Lafayette, Louisiana 70501**
**(337) 714-9077**
**COUNSEL FOR APPELLANT:**
**C.D. (biological mother of Z.D.)**

**Jessica Haughton**
**LaShonda Nady**
**c/o Foster Care Worker**
**100 Asma Boulevard, Suite 260**
**Lafayette, Louisiana 70508**
**(337)-262-2250**
**Case Workers for C.D. and Z.D.**

**Jane Hogan**
**Hogan Attorneys**
**(Louisiana Appellate Project)**
**318 North Cherry Street**
**Hammond, Louisiana 70401**
**(985) 542-7730**
**APPELLATE COUNSEL FOR APPELLANT:**
**C.D. (biological mother of Z.D.)**

**Christian B. Landry, Assistant District Attorney**
**Fifteenth Judicial District Attorney's Office**
**Post Office Box 3306**
**Lafayette, Louisiana 70502**
**(337) 232-5170**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**WILSON, Judge.**

C.D. is the biological mother of Z.D.[1]  C.D. appeals the trial court's ruling that terminated her parental rights and certified six-year-old Z.D. to be eligible for adoption.  For the following reasons, we affirm the trial court's ruling.

I.

**ISSUES**

We must decide whether the state properly terminated C.D.'s parental rights with respect to her minor son, Z.D.  C.D. alleges that termination was unwarranted because the State did not prove by clear and convincing evidence that:  (1) she did not substantially comply with her case plan, (2) the Department of Children and Family Services (DCFS) provided reasonable efforts to facilitate reunification, (3) there was no reasonable expectation of significant improvement, or (4) termination of parental rights was in Z.D.'s best interest.

II.

**FACTS AND PROCEDURAL HISTORY**

Z.D. was born on August 3, 2015.  On August 14, 2019, DCFS received a report of neglect/abandonment regarding Z.D.  It was reported that C.D. was walking down a highway in Maurice, Louisiana, with four-year old Z.D., who was barefoot, in a diaper, and had a black eye.  Two individuals decided to give C.D. and Z.D. a ride to a store near the Acadiana Mall and then contacted the Lafayette Police Department.  When the officers arrived, C.D. jumped out of the vehicle, leaving Z.D.  When officers caught up with C.D., they attempted to get information about C.D.'s living arrangements, but she was not very cooperative

---

[1] Pursuant to Uniform Rules—Court of Appeal, Rule 5–2, initials are used throughout this opinion to ensure the confidentiality of the minor.

and could not give much information other than that she lived in Nacogdoches, Texas, but was visiting relatives in Lafayette, Louisiana. C.D. was arrested and charged with child desertion. Z.D. was placed in State's custody at the time of C.D.'s arrest because there was no information available with regard to Z.D.'s father's name or whereabouts.[2] An instanter order issued on August 14, 2019.

A court appointed special advocate (CASA) was appointed for Z.D., and a continued custody hearing was scheduled for August 19, 2019. Z.D. was adjudicated a child in need of care on November 20, 2019. Z.D. was placed in a foster home.

For several months, the goal of the case plan was reunification. C.D. received mental health counseling and attended parenting classes. C.D. was diagnosed with major depressive disorder. Although C.D. obtained housing, she indicated that she was having difficulty affording her rent. C.D. was unemployed during the relevant time period, and she alleges in her brief to this court that she is still unable to work due to depression.

C.D. initially attended all scheduled visits with Z.D., and when in-person visits were discontinued due to COVID, C.D. maintained contact through FaceTime and communication with Z.D.'s foster parents. C.D. was reported to be nurturing to Z.D. during the visits. At a hearing held on February 11, 2020, the caseworker, Andrea Thompson (Ms. Thompson), testified that C.D. was compliant with her case plan.

---

[2] C.D. later identified R.L.D.S., Sr. a/k/a R.L.S. (R.L.S.) as Z.D.'s biological father. R.L.S. did not appear for scheduled DNA testing and did not comply with his case plans. His parental rights with respect to Z.D. were terminated in the December 21, 2020 judgment. R.L.S. did not appeal the termination of his parental rights.

As of June of 2020, C.D. had no permanent housing. At a hearing held on August 18, 2020, Ms. Thompson testified that C.D. had been inconsistent with her case plan. Ms. Thompson testified that C.D. missed several visits with Z.D.

On September 28, 2020, the State filed a petition for termination of parental rights and certification for adoption. The hearing on this petition was held on December 14, 2020. C.D. was personally served with the notice of trial, but she did not appear for trial. C.D. was offered the opportunity to appear via Zoom, but chose not to participate.

The trial court found that the State had proven, by clear and convincing evidence, that grounds for termination existed under La.Ch.Code art. 1015(5) and (6).[3] The trial court found that there had been no substantial parental compliance with the court-approved case plans. Specifically, the trial court found that C.D. failed to have and maintain stable housing and did not maintain contact with DCFS. The trial court further noted that C.D. had been discharged from parenting classes by the Extra Mile, which had concerns about her parenting ability. The trial court also noted that C.D. had another active DCFS case for another child in the State's custody in Livingston Parish, Louisiana, and that C.D. had a prior termination of parental rights involving another one of her children in Vermilion Parish. The Vermillion Parish trial court found that there was no reasonable expectation of significant improvement in C.D.'s condition or conduct in the near future. The trial court further found that termination of parental rights would be in

---

[3] Article 1015(5) states that one ground for termination of parental rights is the "[a]bandonment of a child by placing him in the physical custody of a nonparent, or the department, . . ." Article 1015(6) states that another ground for termination of parental rights is the expiration of one year after the child is removed from the parent's custody without substantial parental compliance with court-approved case plan and when "there is no reasonable expectation of significant improvement in the parent's condition or conduct in the near future, considering the child's age and his need for a safe, stable, and permanent home."

3

Z.D.'s best interest considering his age and his need for a safe, stable, and permanent home. A judgment terminating C.D.'s parental rights and certifying Z.D. eligible for adoption was signed on December 21, 2020. C.D. now appeals the termination of her parental rights to Z.D.

**III.**

**STANDARD OF REVIEW**

"Our supreme court has recognized that the gravity of terminating parental rights requires our courts to impose a stricter standard of proof than the preponderance of the evidence standard; rather, the State must prove by clear and convincing evidence at least one of the statutory grounds contained in La.Ch.Code art. 1015 in order to terminate a parent's rights." *State ex rel. D.H.L.*, 08-39, pp. 4-5 (La.App. 3 Cir. 4/30/08), 981 So.2d 906, 910. Even when the trial court finds that the state has met this evidentiary burden, it "still should not terminate parental rights unless it determines that to do so is in the child's best interests." *State ex. rel. J.M.*, 02-2089, p. 9 (La. 1/28/03), 837 So.2d 1247, 1253.

"We review a trial court's determination as to whether parental rights should be terminated according to the manifest error standard of review." *State in Interest of M.A.N.*, 12-946, p. 3 (La.App. 3 Cir. 12/28/12), 106 So.3d 288, 290–91. Factual determinations, such as "whether there is a reasonable expectation of reformation, will not be set aside in the absence of manifest error." *State in Interest of J.M.*, 30,302, p. 6 (La.App. 2 Cir. 10/29/97), 702 So.2d 45, 49, *writ denied,* 97-2924 (La. 2/6/98), 709 So.2d 736.

**IV.**

**LAW AND DISCUSSION**

C.D. argues that the State failed to prove by clear and convincing evidence that she did not substantially comply with her case plan because she had been in full compliance with her case plan for six months until issues arose from the loss of her housing due to her inability to afford the rent.

At the hearing on December 14, 2020, Ms. Thompson testified that C.D. had seven different residences during the life of the case and had not been compliant with her case plan with regard to housing. Ms. Thompson further testified that C.D. was inconsistent in her contact with the agency and had most recently indicated that she was moving to Crowley but did not give the agency an address.

Ms. Thompson testified that C.D. was not employed but did receive Supplemental Security Income. According to Ms. Thompson, C.D. did not provide any parental contribution to Z.D.'s support during the pendency of this case. While C.D. had been regularly visiting with Z.D., Ms. Thompson testified that C.D. had not visited with Z.D. since August 17, 2020. LaShonda Nady (Ms. Nady), Z.D.'s caseworker, testified that she thought C.D. had a FaceTime visit with Z.D. on November 29, 2020. Ms. Nady further testified that C.D. was supposed to have a visit with Z.D. on December 14, 2020, but C.D. did not show up for that visit.

Ms. Thompson testified that C.D. was compliant with her case plan with regard to mental health counseling and participation in parenting classes. C.D.'s drug screens had been negative until the one taken in December of 2019 was positive for norbuprenorphine and norbuprenorphine metabolites. C.D. did not provide any prescription for this drug.

5

Based on the testimonies of all the case workers, we find no manifest error in the trial court's finding that C.D. did not substantially comply with her case plan.

Next, C.D. argues that the State failed to prove by clear and convincing evidence that DCFS made reasonable efforts to facilitate reunification because the DCFS failed to assist her in securing stable housing. "'Reasonable efforts' means [sic] the exercise of ordinary diligence and care by department caseworkers and supervisors and shall assume the availability of a reasonable program of services to children and their families." La.Ch.Code art. 603(25). "'Reasonable efforts' does [sic] not require the department to provide rent-free housing to a parent; it does, however, require that when housing is an impediment to reunification, the department direct the parent to the appropriate agencies that may be able to assist in finding stable housing." *State in the Interest of M.B.*, 12-547, p. 11 (La.App. 5 Cir. 1/30/13), 108 So.3d 1237, 1244, *citing State ex rel. A.T.*, 06-501 (La. 7/6/06), 936 So.2d 79.

C.D. argues that she was compliant with her case plan but struggled to find affordable housing. C.D. asserts that the sole impediment to her reunification with Z.D. was her lack of stable housing. She states that there is no reason to believe that she would not comply with her case plan if she was provided with stable housing. This court notes, however, that C.D. provided no evidence or plan for procurement of housing. On August 18, 2020, Ms. Thompson testified that DCFS, along with C.D.'s mental health provider, had "been assisting [C.D.] in trying to obtain stable housing or shelter, but the shelters are not taking anyone because of Covid. So we're trying to help her find housing."

C.D. cites *State ex rel. A.T.*, 936 So.2d 79, for the proposition that the State is required to assist in finding housing before parental rights are terminated. In that case, the State admitted that no rehabilitative services were offered to assist in obtaining suitable housing after the three children were taken into custody in 2002. Parental rights were terminated in 2005. The mother in that case was employed and paid child support through payroll garnishments, she attended all visitations (except one), and passed all drug screens. These circumstances do not exist in C.D.'s case.

When certain grounds exist, DCFS "**may** file a motion for a judicial determination that efforts to reunify the parent and child are not required." La.Ch.Code art. 672.1 (emphasis added). For example, subsection C provides that "[e]fforts to reunify the parent and child are not required if a court of competent jurisdiction" determines that "(1) [t]he parent has subjected the child egregious conduct or conditions, including but not limited to any of the grounds for certification for adoption pursuant to Article 1015" or "(4) [t]he parental rights of the parent to a sibling have been terminated involuntarily." La.Ch.Code art. 672(C). Courts have held that the language is permissive rather than mandatory such that the DCFS is not required to file a motion. *State ex rel. J.B. v. J.B., Jr.*, 35,846 (La.App. 2 Cir. 2/27/02), 811 So.2d 179.

Ms. Thompson testified that C.D. had her parental rights terminated for one of her children in Vermilion Parish and that she had an open case in Livingston Parish regarding another one of her children. Ms. Thompson also reported that two of C.D.'s other children resided with their fathers.

7

For these reasons, including the fact that efforts at reunification may not have been required under La.Ch.Code art. 672.1, we find no manifest error in the trial court's finding that reasonable efforts at reunification were made.

C.D. also argues that the State failed to prove by clear and convincing evidence that there was no reasonable expectation of significant improvement in the future. C.D. asserts that there is a reasonable likelihood that her situation will improve in the future if she is provided stable housing.

> The jurisprudence indicates to us that there is no expectation of reformation and no likelihood of reformation when the parent exhibits prolonged and consistent abusive or negligent behavior or a long history of substance abuse. Furthermore, conduct such as mental or behavioral disorders which cause a parent to refuse to cooperate with the authorities in addressing the needs of the child would also suggest that no reasonable expectation of reformation exists and that it is unlikely that the parent will reform. However, a reasonable expectation of reformation is found to exist if the parent has cooperated with state officials and has shown improvement, although all of the problems that exist have not been eliminated.

*State in Interest of L.L.Z. v. M.Y.S.*, 620 So.2d 1309, 1317 (La.1993).

> Reformation sufficient to prevent termination of parental rights requires that the parent demonstrate a substantial change, such as significantly altering or modifying that behavior which served as the basis for, and resulted in, the state's removal of the child from the home. A parent who professes an intention to exercise his or her parental rights and responsibilities must take some action in furtherance of the intention to avoid having those rights terminated, even when the parent is mentally ill or impaired.

*State in Interest of J.M.*, 702 So.2d at 49.

The trial court found that C.D. would not be able to satisfactorily work her case plan if given the chance in the future. The trial court based this finding on the fact that C.D.'s housing was, at best, sporadic and a demonstrated lack of commitment to try to regain custody of the child because C.D. was only in contact with DCFS if the agency sought her out, that she was discharged from the Extra

Mile for not being able to follow through with their parenting recommendations, and that she still had not obtained suitable housing and had not provided DCFS with a current address. This court finds no manifest error in these findings.

Finally, C.D. argues that the State failed to prove by clear and convincing evidence that the termination of her parental rights was in Z.D's best interest. C.D. notes that it is undisputed that she has a strong bond with her son. Z.D.'s attorney told the court that Z.D. indicated to her that he wanted to return to his mother. Ms. Nady, on the other hand, testified that Z.D. was not "cognitively able to express his wanting to go to his mom."

On August 18, 2020, Ms. Nady, testified that Z.D. was doing well, adjusting, and getting along well with the other children his foster home. Ms. Nady testified that Z.D.'s foster parents are willing to adopt him.

> [M]ore than simply protecting parental rights, our judicial system is required to protect the children's rights to thrive and survive. A child has an interest in the termination of parental rights that prevent adoption and inhibit that child's establishment of secure, stable, long term, continuous family relationships. The child has a profound interest in being in a home where she will receive proper parental care."

*State ex rel. T.L.B.*, 00-1451, p. 4 (La.App. 3 Cir. 4/4/01), 783 So.2d 626, 629.

Moreover, this court has held that: [d]espite the fact that there may have been little direct testimony regarding the best interests of the children during the trial on the merits, the trial court had the benefit of the numerous reports from DCFS and CASA in which to determine whether the termination of [] parental rights was in the best interest of the children. *State in Interest of R.J.*, 18-332, pp. 13-14 (La.App. 3 Cir. 9/26/18), 255 So.3d 1138, 1146. Such is the case here. The DCFS reports after August of 2020 recommend adoption. Although the CASA reports do not recommend adoption, they recommended continued placement with the foster family and noted that it was good place for Z.D. to be "during this time

of turmoil in his life."  Therefore, we find no manifest error in the trial court's finding that the termination of C.D.'s parental rights was in Z.D.' best interests.

## V.

## <u>CONCLUSION</u>

For the foregoing reasons, we affirm the trial court's judgment terminating C.D.'s parental rights with regard to Z.D.  Costs of this appeal are assessed to C.D.

**AFFIRMED.**

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION.
Rule 2-16.3 Uniform Rules, Courts of Appeal.